ON–LINE CÁRELINE, INC., Appellant,

v.

AMERICA ONLINE, INC., (substituted for CompuServe, Inc.), Appellee.

On–Line Careline, Inc., Appellant,

v.

America Online, Inc., (substituted for CompuServe, Inc.), Appellee.

Nos. 99–1432, 99–1443.

United States Court of Appeals, Federal Circuit.

Oct. 10, 2000

L. Dan Tucker, Lock, Liddell & Sapp, of Dallas, Texas, argued for appellant. With him on the brief was Kristin Jordan Harkins.

Michael A. Grow, Arent, Fox, Kintner, Plotkin & Kahn, of Washington, DC, argued for appellee.

Before PLAGER, LOURIE, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

## DECISION

On–Line Careline, Inc. appeals from two decisions of the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB"). First, On–Line Careline appeals from the March 23, 1999 decision of the TTAB sustaining an opposition by America Online, Inc. ("AOL") against On–Line Careline's service mark based on a finding of likelihood of confusion. *Compu-Serve, Inc. v. Online Careline, Inc.*, No. 98,117, 1999 WL 181156 (TTAB Mar. 23, 1999). On–Line Careline also appeals from the TTAB's March 30, 1999 decision denying its petition to cancel AOL's service mark. *On–Line Careline, Inc. v. America Online, Inc.*, No. 25,193, 1999 WL 180844 (TTAB Mar. 30, 1999). We granted Appellee AOL's motion to consolidate the two appeals. For the reasons discussed below, we affirm both decisions of the TTAB.

## BACKGROUND

Appellant On–Line Careline is an Internet service provider. Marketed under the name "ON–LINE TODAY," On–Line Careline's service provides personal computer ("PC") users with direct physical connection to the Internet via point-to-point protocol ("PPP"). To obtain connection to the Internet, customers pre-set the PPP dialer on their PCs to connect to On–Line Careline's Internet protocol address. The user's PC dials into On–Line Careline's bank of modems, and upon verification of the user's ID and password, the user is able to view Internet sites or use services such as e-mail. Because On–Line Careline only provides physical connection to the Internet, its customers obtain these services from other independent sources.

Appellee AOL[1] provides direct physical connection to the Internet in essentially the same manner as On–Line Careline. Marketed under the name "CompuServe Information Service," the service also provides online features such as news, information, banking, shopping, and e-mail. One of AOL's informational features is an electronic publication called "ONLINE TODAY."

The mark ONLINE TODAY was first used by CompuServe in 1983 as the name of its printed magazine. In September 1984, CompuServe began to use ONLINE TODAY in connection with online computer services, specifically, an electronic version of its printed magazine. The printed and electronic versions coexisted until 1990. Since then, ONLINE TODAY has been used only in connection with the electronic service.

On–Line Careline's first use of ON–LINE TODAY occurred between late 1992 and early 1993. The company was in its start-up phase and ON–LINE TODAY was used in the business plan as its trade name. In late 1993, On–Line Careline sought to register "ON–LINE TODAY" with the U.S. Patent and Trademark Office ("the PTO") for "services in the nature of interactive electronic communication of information, including providing interactive advice and counseling via computer

1. AOL was substituted for CompuServe, Inc. as a party to these proceedings on June 25, 1998.

usage over telephone lines." In February 1995, the company made its first sale of services under the name ON–LINE TODAY. The PTO issued a Notice of Publication for the proposed mark on April 7, 1995 that stated that if no opposition was filed within the specified time period, a notice of allowance would be issued.

After the PTO published the mark in the *Official Gazette*, CompuServe filed a timely Notice of Opposition on July 21, 1995. As grounds for opposition, CompuServe asserted that it had continuously used the mark ONLINE TODAY in connection with online computer services long before On–Line Careline had filed its application. Further, CompuServe pleaded that the services it offered under the ONLINE TODAY mark were closely related to the services specified in On–Line Careline's application, and that confusion was likely because On–Line Careline's mark was similar to its own mark.

On November 4, 1996, the two parties stipulated to an amendment of the application. On–Line Careline filed a Consented Agreement of Application with the TTAB, seeking to amend the identification of services to simply "providing internet access." The TTAB, however, denied without prejudice the proposed amendment because the word "Internet" was a registered mark, and "providing internet access" was indefinite as to the specific services. On February 20, 1997, On–Line Careline filed a second Consented Agreement of Application. The identification of services was amended to "[p]roviding telecommunications connections to a global computer network in International Class 38." The TTAB granted this second consented motion to extend, with the provision that On–Line Careline's mark was to be republished for opposition in International Class 38 if On–Line Careline was to ultimately prevail in this opposition.

In the meantime, CompuServe was issued Registration No. 1,938,569 on November 28, 1995 for the mark ONLINE TODAY for "providing access to online computer services offering computer-industry news, commentary and product reviews." The registration was issued approximately seven months after the PTO had sent the Notice of Publication to On–Line Careline. On May 31, 1996, On–Line Careline petitioned for cancellation of CompuServe's ONLINE TODAY mark. As grounds for cancellation, On–Line Careline asserted that it was using the mark ON–LINE TODAY in connection with "services in the nature of interactive electronic communication of information, namely providing information in the fields of financial, news, sports, weather and general information and in providing round table discussions whereby users communicate their opinions on topics and in providing internet access." Further, On–Line Careline asserted that CompuServe was not using the registered mark ONLINE TODAY for the services set forth in the registration, thereby abandoning its mark.

On May 14, 1998, the TTAB held a hearing with respect to the opposition proceeding. The TTAB determined that there was a likelihood of confusion between the two marks and denied registration of On–Line Careline's mark. *Compu-Serve, Inc. v. Online Careline, Inc.*, No. 98,117, 1999 WL 181156, at *2 (TTAB Mar. 23, 1999). The TTAB found that the two marks were "virtually identical," and the services associated with the marks were "closely related." *Id.* at *3. In particular, the TTAB noted that because CompuServe provided both physical Internet connection and online services, prospective customers have reason to expect both services to be available from a single source. *Id.* The TTAB rejected On–Line Careline's argument that because the purchasers of Internet services are knowledgeable and sophisticated, confusion was not likely. The TTAB noted that with the broad proliferation of computers into homes, schools, and businesses, not all customers are necessarily knowledgeable enough to distinguish between the two marks and their respec-

tive services. *Id.* Further, On–Line Careline pointed to the fact that no actual confusion had occurred in the years the two marks were used in commerce. The TTAB, however, found the argument to be unpersuasive, noting that the test is whether confusion is likely, and not whether it has actually occurred. *Id.* (citing *Gillette Canada, Inc. v. Ranir*, 23 USPQ2d 1768 (TTAB 1992)).

The hearing for the cancellation proceeding was held on June 25, 1998, during which AOL was substituted for CompuServe. The TTAB denied On–Line Careline's petition to cancel AOL's ONLINE TODAY mark, finding that On–Line Careline had not established that AOL had abandoned its registered mark. *On–Line Careline, Inc. v. America Online, Inc.*, No. 25,193, 1999 WL 180844, at *2 (TTAB. Mar. 30, 1999). The TTAB rejected On–Line Careline's argument that because the ONLINE TODAY mark was merely a menu item, AOL was not using the mark in connection with the services specified in the registration. *See id.* The TTAB reasoned that because menu items are the mechanisms by which users access a particular service—in this case, by providing access to online computer information—the description of services in the registration was accurate. *See id.* at *3. On–Line Careline appeals both decisions of the TTAB.

## DISCUSSION

### A. Likelihood of Confusion

■ We first address the issue pertaining to likelihood of confusion. The PTO may refuse to register a trademark if it so resembles a previously registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d) (1994). Whether a likelihood of confusion exists between two marks is determined on a case-by-case basis, aided by the application of the factors set out in *In re E.I. DuPont*

*DeNemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A.1973).

■ The *DuPont* factors are as follows: (1) the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; (2) the similarity or dissimilarity and nature of the goods described in the application or registration of the mark, or in connection with which a prior mark is in use; (3) the similarity or dissimilarity of established, likely-to-continue trade channels; (4) the conditions under which and the buyers to whom sales are made; (5) the fame of the prior mark; (6) the number and nature of similar marks in use on similar goods; (7) the nature and extent of any actual confusion; (8) the length of time during and the conditions under which there has been concurrent use without evidence of actual confusion; (9) the variety of goods on which a mark is or is not used; (10) the market interface between the applicant and the owner of a prior mark; (11) the extent to which the applicant has a right to exclude others from use of its mark on its goods; (12) the extent of potential confusion; and (13) any other established fact probative of the effect of use. *See id.*

■ Whether a likelihood of confusion exists is a question of law, based on underlying factual determinations. *See Lloyd's Food Prods., Inc. v. Eli's, Inc.*, 987 F.2d 766, 767, 25 USPQ2d 2027, 2028 (Fed.Cir. 1993). We review questions of law *de novo. See In re International Flavors & Fragrances Inc.*, 183 F.3d 1361, 1365, 51 USPQ2d 1513, 1515 (Fed.Cir.1999). As for questions of fact, we previously reviewed such questions under the "clearly erroneous" standard. *See, e.g., In re Hacot–Colombier*, 105 F.3d 616, 618, 41 USPQ2d 1523, 1525 (Fed.Cir.1997). However, in *Dickinson v. Zurko*, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d 1930 (1999), the Supreme Court established that this court must review PTO findings of fact according to the standards

set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2000).

Section 706 states in relevant part that the reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or]

. . .

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute. . . .

5 U.S.C. § 706(2)(A), (E). Although *Zurko* held that PTO findings of fact are subject to 5 U.S.C. § 706, it did not determine which specific standard of review applies. *See Zurko*, 527 U.S. at 160, 119 S.Ct. 1816, 50 USPQ2d at 1935. In *In re Gartside*, 203 F.3d 1305, 53 USPQ2d 1769 (Fed.Cir. 2000), we answered that question, holding that the appropriate standard of review for PTO findings of fact is the "substantial evidence" standard. *See Gartside*, 203 F.3d at 1315, 53 USPQ2d at 1775. *Gartside* specifically considered factfindings by the Board of Patent Appeals and Interferences ("BPAI"). What *Gartside* did not consider, however, was whether the same standard also applies to findings of fact by the TTAB, the board whose factual findings are at issue in this case. *See also In re Wada*, 194 F.3d 1297, 1299, 52 USPQ2d 1539 (Fed.Cir.1999).

■ In *Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894 (Fed.Cir. 2000), we resolved this issue. We held that the TTAB's factual findings will be upheld "unless they are unsupported by substantial evidence." *Id.* at 1327, 214 F.3d 1322, 54 USPQ2d at 1897. The conclusion in *Recot* is consistent with our decision in *Gartside* and other statutory authority. The PTO was established as an agency within the Department of Commerce to oversee the registration and pro-

tection of patents and trademarks, with two operating units separating the patent and trademark functions. *See* 35 U.S.C. § 1 (1994); Pub.L. No. 85–609 (1958). The two units operate independent of each other, but remain part of the PTO. *See, e.g.*, 15 U.S.C. § 1051(a) (1997) (stating that a trademark may be registered by paying the prescribed fee and filing an application with the PTO).

Nothing in these statutes suggests that the TTAB should receive any less deference on factfinding than the BPAI. Moreover, nothing in the APA suggests this. As we held in *Gartside*, the substantial evidence standard applies when "our review of the Board's decision is confined to the factual record compiled by the Board." *Gartside*, 203 F.3d at 1315, 53 USPQ2d at 1775. This is as true for TTAB findings as it is for the BPAI. Therefore, the standard applicable to BPAI findings of fact is also applicable to the TTAB. Accordingly, we review TTAB findings of fact for substantial evidence.

■ The substantial evidence standard requires the reviewing court to ask whether a reasonable person might find that the evidentiary record supports the agency's conclusion. *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *Zurko*, 527 U.S. at 162, 119 S.Ct. 1816, 50 USPQ2d at 1935. Considered to be less deferential than the "arbitrary, capricious" standard, *see In re Gartside*, 203 F.3d at 1312, 53 USPQ2d at 1773, "substantial evidence" necessitates a stricter judicial review of agency factfinding. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Zurko*, 527 U.S. at 162, 119 S.Ct. 1816, 50 USPQ2d at 1936. The Supreme Court has indicated that "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . Mere uncorroborated hearsay or rumor does not constitute substantial evidence." *In re Gartside*, 203 F.3d at 1312,

53 USPQ2d at 1773 (quoting *Consolidated Edison*, 305 U.S. at 229–30, 59 S.Ct. 206). A review for substantial evidence "involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." *Id.* (citing *Universal Camera*, 340 U.S. at 487–88, 71 S.Ct. 456). Moreover, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* (quoting *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)).

█ On–Line Careline argues that the record does not support the TTAB's conclusion of a likelihood of confusion between the two marks at issue. On appeal, On–Line Careline concedes the finding that the two marks are very similar, but argues that the other *DuPont* factors weigh against a finding of likelihood of confusion. Because it is undisputed that the marks ONLINE TODAY and ON–LINE TODAY are similar in appearance, sound, and connotation, we shall proceed to address the other *DuPont* factors that are relevant to this case. *See DuPont*, 476 F.2d at 1362, 177 USPQ at 568 ("Reasonable men may differ as to the weight to give specific evidentiary elements in a particular case . . . . upon consideration of all the evidence.").

The first *DuPont* factor we consider is the "similarity or dissimilarity" of the services. *See id.* at 1361, 476 F.2d 1357, 177 USPQ at 567. On–Line Careline argues that the two services at issue are significantly different because On–Line Careline provides Internet connection services, whereas AOL's ONLINE TODAY service involves Internet "content." The TTAB found that although the services offered by the two parties were different, the services were nevertheless closely related. Upon examination of the record as a whole, we conclude that the TTAB's finding is supported by substantial evidence. First, the services associated with both

marks are related to the use of the Internet. Second, although the services are different, it is reasonable to believe that the general public would likely assume that the origin of the services are the same. *See Recot*, 214 F.3d at 1329 ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods."). Thus, an individual who came across the ON–LINE TODAY mark, used in connection with AOL's proprietary content service, and ON–LINE TODAY, used to distinguish On–Line Careline's Internet connection service, may think that the two are related given the strong similarity of the two marks. Indeed, the TTAB found that Internet connection services and Internet content publications have been shown to be available from a single source. Furthermore, testimony from On–Line Careline's own witness indicated that a PC user could potentially subscribe to both companies' services. Therefore, given our review for substantial evidence, we see no reason to disturb the TTAB's finding on this issue.

We next address the "similarity of trade channels" factor. *See DuPont*, 476 F.2d at 1362, 177 USPQ at 567. On–Line Careline argues that the two companies market their services through different channels. It asserts that On–Line Careline's target market consists of individuals who want to connect to the Internet, whereas AOL targets individuals who seek both Internet connection and proprietary content. The TTAB found that the markets for both services were broad, with both companies targeting customers who do not necessarily have the knowledge to distinguish between the two services. Once again, we see no reason to disturb the TTAB's findings. In *Gartside*, we noted that "[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence." *Gartside*, 203 F.3d at 1312, 53 USPQ2d at 1773 (quoting *Consolidated Edison*, 305 U.S. at

229–30, 59 S.Ct. 206). Here, On–Line Careline contends that the two services are offered through different channels but offers no evidence to support its contention. Contrary to On–Line Careline's assertion, the two services at issue are offered through the same channel, i.e., the Internet. Furthermore, the record shows that the two companies target similar consumers and employ similar advertising and marketing channels. Therefore, we conclude that substantial evidence supports the TTAB's finding on this issue.

On–Line Careline asserts that other *Du-Pont* factors mandate reversal. On–Line Careline points to the sophistication of the consumers in this market, the fact that only AOL subscribers can access the ONLINE TODAY content service, and the absence of actual confusion. The TTAB considered all of these arguments and rejected them. First, the TTAB noted that because of the broad proliferation of computer and Internet use, there is no basis for concluding that Internet users are any more knowledgeable or sophisticated than the general public. As for the fact that only AOL subscribers can access the ONLINE TODAY service, the TTAB found that there are a vast number of AOL subscribers and such subscribers may likely encounter On–Line Careline's mark while using the Internet. Finally, the TTAB agreed with On–Line Careline that there was no evidence of actual confusion. However, the TTAB discounted the significance of this factor, given the other *Du-Pont* factors that weigh in favor of the likelihood of confusion determination. On appeal, On–Line Careline has not demonstrated that these findings are unsupported by substantial evidence. At most, On–Line Careline has pointed to evidence that conflicts with these findings. However, when reviewing agency fact-finding, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Gartside*, 203 F.3d at 1312, 53 USPQ2d at 1773. Accordingly, we conclude that the TTAB did not err in finding that a likelihood of confusion exists between the two marks.

## B. Abolandonment

A registered trademark may be canceled if it has been abandoned. *See* 15 U.S.C. § 1064(3) (2000). Under the Lanham Act, a registered trademark is considered abandoned if its "use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127 (2000). Since service mark registrations are presumed valid, the party seeking cancellation of such registration must rebut this presumption by a preponderance of the evidence. *See Martahus v. Video Duplication Serv., Inc.*, 3 F.3d 417, 421, 27 USPQ2d 1846, 1850 (Fed.Cir.1993); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023, 13 USPQ2d 1307, 1309 (Fed.Cir.1989). The party seeking cancellation establishes a prima facie case of abandonment by showing proof of nonuse for three consecutive years. *See* 15 U.S.C. § 1127. Establishing a prima facie case "eliminates the challenger's burden to establish the intent element of abandonment as an initial part of [his] case," creating a rebuttable presumption that the trademark owner has abandoned the mark without intent to resume use. *Id.* The burden then shifts to the trademark owner to produce evidence that he either used the mark during the statutory period or intended to resume use. *See id.* "The burden of persuasion, however, always remains with the petitioner to prove abandonment by a preponderance of the evidence." *Id.*

Abandonment is a question of fact. *See id.* As we noted earlier, we sustain the TTAB's factual findings if supported by substantial evidence. *See In re Gartside*, 203 F.3d at 1315, 53 USPQ2d at 1775.

On–Line Careline argues that AOL had abandoned the ONLINE TODAY mark by not using the mark in connection with the services specified in the

registration. The services specified in the registration were for "providing access to online computer services offering computer-industry news, commentary and product reviews." On–Line Careline contends that AOL had abandoned its registered mark by using it in connection with an Internet content service.

The crux of the TTAB's analysis involved determining the meaning of "providing access." The TTAB found that "access" could mean enabling users to obtain a particular service. Because it found that AOL had provided its users with "access" to its service through on-screen menu items, the TTAB determined that AOL had used the ONLINE TODAY mark in accordance with the registration, and hence did not abandon the mark.

This finding is supported by substantial evidence. First, the service behind AOL's ONLINE TODAY was providing computer-related news. Second, users obtained that information by selecting the menu item bearing the ONLINE TODAY mark. Moreover, menu items are the mechanisms by which users obtained access to a particular online service, whether it was On–Line Careline's or AOL's. In a very literal sense, the subject mark was the designation by which AOL provides users access to the Internet news and information service. Therefore, we find that the TTAB did not err in finding that AOL had not abandoned the ONLINE TODAY mark. Because On–Line Careline could not rebut the presumption of validity that attaches to AOL's registered mark, the TTAB properly denied cancellation of AOL's ONLINE TODAY mark.

### CONCLUSION

The decisions of the TTAB are
*AFFIRMED.*

### COSTS

No costs.