# United States Court of Appeals for the Federal Circuit

2009-1239
(Opposition No. 91/159,002)

THE CRASH DUMMY MOVIE, LLC,

Appellant,

v.

MATTEL, INC.,

Appellee.


    Theodore H. Davis Jr., Kilpatrick Stockton LLP, of Atlanta, Georgia, argued for appellant. With him on the brief was Charlene R. Marino. Of counsel on the brief was Ted F. Gerdes, Gerdes Law, of Beverly Hills, California.

    William C. Rooklidge, Howrey LLP, of Irvine, California, argued for appellee. With him on the brief were Alyson G. Barker; and Bobby A. Ghajar, of Los Angeles, California.

Appealed from: United States Patent and Trademark Office
                Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

2009-1239
(Opposition No. 91/159,002)

THE CRASH DUMMY MOVIE, LLC,

Appellant,

v.

MATTEL, INC.,

Appellee.

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

DECIDED:  April 16, 2010

_____

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

RADER, Circuit Judge.

The Trademark Trial and Appeal Board ("Board") sustained Mattel, Inc.'s ("Mattel") challenge to The Crash Dummy Movie, LLC's ("CDM") application to register the mark CRASH DUMMIES for a line of games and playthings.  The record leaves no doubt that CDM's proposed mark is likely to cause confusion with Mattel's previously used marks CRASH DUMMIES and THE INCREDIBLE CRASH DUMMIES (collectively, "CRASH DUMMIES marks") for action figures and playsets.  CDM asserts, however, that these marks were abandoned.  Because substantial evidence supports the Board's finding that Mattel overcame the statutory presumption of abandonment of its CRASH DUMMIES marks, this court affirms.

Mattel's predecessor-in-interest, Tyco Industries, Inc. ("Tyco"), first produced a line of toys under the CRASH DUMMIES marks in 1991. In 1993, Tyco obtained federal trademark registrations for the CRASH DUMMIES marks: CRASH DUMMIES (Registration No. 1809338) and THE INCREDIBLE CRASH DUMMIES (Registration No. 1773754). Tyco sold toys under the CRASH DUMMIES marks through at least 1994. In addition, Tyco entered into forty-nine licenses for use of the CRASH DUMMIES marks in connection with a variety of products. The licenses expired on December 31, 1995, with some licenses having a product sell-off period of four to six months following their expiration.

On July 14, 1995, CDM entered into an option agreement with Tyco to produce a motion picture based on Tyco's line of toys sold under the CRASH DUMMIES marks. The option agreement expired on July 14, 1996. Although CDM attempted to renegotiate a license later that year, Tyco declined to enter into another option agreement with CDM.

In the mid-1990's, Tyco experienced financial difficulties and began negotiating an acquisition with Mattel. On February 12, 1997, Tyco assigned its trademark portfolio, including the CRASH DUMMIES marks, to Mattel. Mattel officially purchased Tyco on December 31, 1997. Mattel later recorded Tyco's assignment with the United States Patent Trademark Office ("USPTO") on February 13, 1998. Due to the size of the acquisition, the two businesses did not fully integrate until late 2004 or early 2005.

In 1998, KB Toys approached Mattel, hoping to become the exclusive retailer of toys sold under the CRASH DUMMIES marks. Mattel declined the offer. Mattel needed

to retool Tyco's CRASH DUMMIES toys in order to meet Mattel's stringent safety standards. Mattel determined that the cost of retooling was too significant in light of KB Toys's sales projections at the time.

From 2000 to 2003, Mattel worked on developing a new line of toys under the CRASH DUMMIES marks. In 2000, Mattel began brainstorming ideas for CRASH DUMMIES toys. Mattel researched, developed, and tested its new toys as early as 2001, and obtained concept approval by 2002. Mattel began manufacturing CRASH DUMMIES toys in October 2003, and ultimately reintroduced them into the market in December 2003. While Mattel was developing new toys, the USPTO cancelled the registrations for the CRASH DUMMIES marks on December 29, 2000, because Mattel did not file a section 8 declaration of use and/or excusable nonuse for the marks.

On March 31, 2003, CDM filed an intent-to-use application for the mark CRASH DUMMIES for games and playthings. Mattel opposed CDM's application, claiming priority to Tyco's prior registration and use of the CRASH DUMMIES marks. Mattel and CDM agree that their respective marks are likely to cause confusion. The only disputed issue before the Board was whether Mattel was entitled to claim common law trademark rights to the CRASH DUMMIES marks predating CDM's March 2003 filing date. The Board found a prima facie abandonment of the CRASH DUMMIES marks based on three years of nonuse, beginning at the earliest on December 31, 1995, and ending at Mattel's actual shipment of CRASH DUMMIES toys in December 2003. However, the Board concluded that Mattel rebutted the presumption of abandonment of its common law trademark rights by showing "reasonable grounds for the suspension and plans to resume use in the reasonably foreseeable future when the conditions requiring

suspension abate." CDM appeals the Board's decision sustaining Mattel's opposition. This court has jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II.

Abandonment of a trademark is a question of fact, which this court reviews for substantial evidence. On-Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1087 (Fed. Cir. 2000). The substantial evidence standard requires this court to ask whether a reasonable person might find that the evidentiary record supports the agency's conclusion. Id. at 1085. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

In addition, this court reviews evidentiary rulings for an abuse of discretion. Chen v. Bouchard, 347 F.3d 1299, 1307 (Fed. Cir. 2003) (citation omitted). This court reverses the Board's evidentiary rulings only if they: (1) were clearly unreasonable, arbitrary, or fanciful; (2) were based on an erroneous conclusions of law; (3) rest on clearly erroneous findings of fact; or (4) follow from a record that contains no evidence on which the Board could rationally base its decision. Id. (citation omitted).

## III.

A registered trademark is considered abandoned if its "use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127 (2006). "Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." Id. A showing of a prima facie case creates a rebuttable presumption that the trademark owner has abandoned the mark without intent to resume use. On-Line Careline, 229 F.3d at 1087. "The burden then shifts to the trademark owner to produce evidence that he either used

the mark during the statutory period or intended to resume use." Id. "The burden of persuasion, however, always remains with the [challenger] to prove abandonment by a preponderance of the evidence." Id.

As an initial matter, CDM does not challenge the Board's finding that Tyco did not abandon the CRASH DUMMIES marks before the 1997 assignment. CDM only challenges the Board's factual finding regarding Mattel's intent to resume use after it acquired the marks in February 1997 until it began selling CRASH DUMMIES toys in December 2003.

Substantial evidence supports the Board's finding that Mattel intended to resume use of the CRASH DUMMIES marks during the contested time period. First, in 1998, Mattel entered into discussions with KB Toys about becoming the exclusive retailer of CRASH DUMMIES toys. Mattel considered the relative merits of exclusive sales through KB Toys and the high cost of retooling Tyco's product line to meet Mattel's stringent safety standards. Mattel's analysis shows that it contemplated manufacturing toys under the CRASH DUMMIES marks at the time the discussion took place. Although Mattel did not ultimately enter into the KB Toys agreement, no evidence suggests that Mattel rejected the business opportunity because it decided to abandon the marks.

Second, common sense supports the conclusion that Mattel would not have recorded Tyco's trademark assignment with the USPTO in 1998 unless it intended to use the CRASH DUMMIES mark within the foreseeable future. Although Mattel later allowed its trademark registrations to lapse, cancellation of a trademark registration does not necessarily translate into abandonment of common law trademark rights. Nor

does it establish its owner's lack of intent to use the mark.  See Miller Brewing Co. v. Oland's Breweries (1971), Ltd., 438 F.2d 349, 352 n.4 (CCPA 1976) ("Although Oland & Son's registration was cancelled in January of 1968 for failure to file a continued use affidavit, this, in and of itself, does not show an intent to abandon.") (citation omitted). Therefore, Mattel's failure to file a timely Section 8 declaration of use and/or excusable nonuse for the marks does not negate Mattel's intent to resume use of the mark.

Third, substantial evidence supports the Board's finding that Mattel's research and development efforts from 2000 to 2003 indicate its intent to resume use of the marks.  Mattel relied on its internal documents and testimony by Peter Frank, Mattel's marketing manager, to describe its product development activities.  Based on the documents, Frank testified that Mattel began brainstorming ideas for the CRASH DUMMIES toys in 2000, researched and tested them in 2001, and obtained concept approval in 2002.  He also explained that Mattel began manufacturing the CRASH DUMMIES toys in October 2003, culminating in actual shipment in December 2003.

In addition, Mattel's shipment of CRASH DUMMIES toys in December 2003 supports Frank's testimony about Mattel's research and development efforts in the early 2000's.  This court does not disregard this record evidence because it falls outside of the three-year statutory period of nonuse.  The Board may consider evidence and testimony regarding Mattel's practices that occurred before or after the three-year statutory period to infer Mattel's intent to resume use during the three-year period.  See Miller Brewing Co. v. Oland's Breweries, 548 F.2d 349, 352 (CCPA 1976) (considering evidence beyond a statutory period to affirm the Board's decision to sustain opposition

to a trademark application). Therefore, substantial evidence shows that Mattel continuously worked on developing CRASH DUMMIES toys from 2000 to 2003.

CDM disputes the Board's decision that the Mattel documents, which Frank reviewed, qualified as business records under Federal Rules of Evidence 803(6). The business records exception allows admission of records of regularly conducted activity through the testimony of a custodian or other qualified witness. Fed. R. Evid. 803(6). During Frank's deposition testimony, CDM's counsel stipulated that the exhibits he had reviewed were business records of Mattel and Tyco.

Moreover, Frank provided sufficient foundational testimony to show that the documents were Mattel's business records. Although Frank began working at Mattel in August 2003 and thus may not have first-hand knowledge of Mattel's product development, he testified that he had learned about the history of the CRASH DUMMIES product line upon joining Mattel's INCREDIBLE CRASH DUMMIES team. He also acknowledged that he had reviewed Tyco and Mattel's documents and spoke with employees who had been with Tyco and Mattel during the relevant time period. The Board reasonably found that Frank was sufficiently competent and trustworthy to testify on the issues before him. CDM presented no evidence that the testimony was untruthful or unreliable and cannot now withdraw its stipulation that the documents are business records. Therefore, the Board did not abuse its discretion by admitting Mattel's documents and Frank's testimony.

Mattel needed sufficient time to research, develop, and market its retooled CRASH DUMMIES toys after acquiring Tyco's CRASH DUMMIES marks in 1997. Despite Mattel's delay in utilizing the marks for its toys, substantial evidence supports

the Board's finding that Mattel rebutted the statutory presumption of abandonment of the marks. Accordingly, the Board correctly held that CDM may not register its proposed mark CRASH DUMMIES for a line of games and playthings.

## IV.

Because substantial evidence supports the Board's finding that Mattel intended to resume use of the CRASH DUMMIES marks during the period of non-use, this court affirms.

<u>AFFIRMED</u>