NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL J. CUTINO,**
*Appellant,*

**v.**

**NIGHTLIFE MEDIA, INC.,**
*Appellee.*

---

2013-1541

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board, in Opposition No. 91186025.

---

Decided: August 7, 2014

---

MICHAEL J. CUTINO, of Ronkonkoma, New York, pro se.

KENNETH S. MCLAUGHLIN, JR., Law Offices of McLaughlin & Associates, P.C., of Aurora, Illinois, for appellee.

---

Before MOORE, REYNA, and TARANTO, *Circuit Judges.*

PER CURIAM.

Michael J. Cutino appeals *pro se* from the decision of the Trademark Trial and Appeal Board ("Board") of the Patent and Trademark Office ("PTO") dismissing Mr. Cutino's opposition to Trademark Application No. 77/325,174 for the mark NIGHTLIFE TELEVISION.[1] For the reasons below, we *vacate* the Board's decision and *remand* for further proceedings.

BACKGROUND

Mr. Cutino owns three federal trademark registrations obtained between 1982 and 1995. Registration No. 1207169 covers the mark NEW YORK'S NIGHTLIFE for "Monthly Magazine Dealing Primarily with Things to Do and See and Places to Go in the State of New York." Registration No. 1324398 covers the mark LONG ISLAND'S NIGHTLIFE for "Monthly Magazine Dealing Primarily with Things to Do and Places to Go in the Long Island and Surrounding Areas and Also Featuring Other Articles of General Interest." Finally, Registration No. 1908411 covers the mark NIGHTLIFE for "magazines of general interest" and "television programming services."

On August 22, 2008, Mr. Cutino filed a Notice of Opposition to Application No. 77/325,174 for the mark NIGHTLIFE TELEVISION. The application, filed in 2007 by Nightlife Media, Inc. ("Applicant"), sought to register NIGHTLIFE TELEVISION for the following services:

> Video-on-demand transmission services, Internet broadcasting services, Broadcasting services via mobile and handsets, Satellite television broadcasting, and Television broadcasting.

---

[1]  *Cutino v. Nightlife Media, Inc.*, Opposition No. 91186025 (T.T.A.B. Apr. 25, 2013) ("Board Decision").

As grounds for opposition, Mr. Cutino asserted likelihood of confusion under Section 2(d) of the Lanham Act between Applicant's mark and Mr. Cutino's three registered marks. Mr. Cutino also asserted deceptiveness and false suggestion under Section 2(a).

Mr. Cutino attached to his Notice of Opposition photocopies of the registration and renewal certificates for his three marks. Mr. Cutino also attached printouts from the PTO's electronic database showing current status and title, but only for two of his registrations, LONG ISLAND'S NIGHTLIFE and NEW YORK'S NIGHTLIFE. In its answer, Applicant admitted that Mr. Cutino is the owner of the three marks and that the pleaded registrations identify the goods and services alleged by Mr. Cutino in his opposition. Applicant did not counterclaim for cancellation of any of the registrations.

Although Mr. Cutino was represented by counsel at the time he filed his opposition, the record shows that his counsel withdrew from representation in March 2011, and Mr. Cutino elected to proceed *pro se*. Mr. Cutino did not take any testimony or introduce any evidence during his testimony period, which was scheduled to close on November 22, 2011. Mr. Cutino served his pretrial disclosures after the testimony period had closed and the October 8, 2011, deadline for pretrial disclosures had passed. Applicant filed a motion to strike as untimely Mr. Cutino's pretrial disclosures, and a motion to dismiss for failure to prosecute under Trademark Rule 2.132(a). In response, Mr. Cutino filed a number of documents and evidence purporting to support his opposition.

In an order dated May 20, 2012, the Board granted the motion to strike but denied the motion to dismiss. The Board found that Mr. Cutino's pretrial disclosures were untimely and also failed to comply with Trademark Rule 2.121(e). The Board also found that the materials submitted by Mr. Cutino after the close of his testimony

period were untimely and otherwise inadmissible. As a result, the evidence on record supporting Mr. Cutino's opposition consisted only of the records of his pleaded registrations. The Board found that, pursuant to Trademark Rule 2.122(d)(1), only the registrations for the marks LONG ISLAND'S NIGHTLIFE and NEW YORK'S NIGHTLIFE were properly introduced. The Board denied Applicant's motion to dismiss, finding that the two registrations were sufficient to make out a prima facie case with respect to standing and priority.

On July 16 and August 1, 2012, Mr. Cutino submitted additional documents and evidence. Invoking Trademark Rule 2.127(a), the Board granted Applicant's motions to strike Mr. Cutino's submissions because Mr. Cutino failed to respond to the motions to strike. The Board noted that, even if not stricken, it would decline to consider Mr. Cutino's filings because they were not accompanied by certificates of service and they were either late or premature if intended as evidence or Mr. Cutino's final brief, respectively.

In its final decision dated April 25, 2013, the Board dismissed Mr. Cutino's opposition. First, the Board ruled that Mr. Cutino's NIGHTLIFE registration was not part of the record because Mr. Cutino failed to submit documents showing the current status and title of the registration as required by the Trademark Rules. The Board also excluded certain submissions made by Mr. Cutino during December 2012 and January 2013 because they were untimely, and concluded that the record in the opposition proceedings consisted solely of: (1) the pleadings; (2) the file of the opposed application; (3) Mr. Cutino's registrations for the marks LONG ISLAND'S NIGHTLIFE and NEW YORK'S NIGHTLIFE; and (4) the deposition of Applicant's owner and founder introduced by Applicant.

Second, the Board found that Mr. Cutino failed to pursue and waived his claims for deceptiveness and false

suggestion under Section 2(a), because he could not establish the required elements of either claim based on the record. Regarding likelihood of confusion, the Board found that Mr. Cutino had established standing and priority based on the two properly-introduced registrations.

Proceeding to examine the *DuPont*[2] factors, the Board found that the dissimilarities between Mr. Cutino's and Applicant's marks outweigh the similarities. The Board acknowledged that the terms LONG ISLAND'S and NEW YORK'S are disclaimed and are descriptive, but found that they still make Mr. Cutino's marks look and sound significantly different than NIGHTLIFE TELEVISION. Finding that the term NIGHTLIFE is at best suggestive of the parties' goods and services, the Board concluded that the addition of the descriptive terms LONG ISLAND'S, NEW YORK'S and TELEVISION sufficiently distinguish the parties' marks and weigh against finding likelihood of confusion.

The Board also found that the parties' goods and services and channels of trade weigh against finding likelihood of confusion. The Board noted that Mr. Cutino's registrations for LONG ISLAND'S NIGHTLIFE and NEW YORK'S NIGHTLIFE cover monthly magazines focused on particular geographic areas, while Applicant sought to register its mark for television and other broadcasting services. Because there was no additional evidence of a relationship between the goods and services or that their channels of trade overlap, the Board concluded that these factors did not favor finding likelihood of confusion.

Given the absence of evidence on the remaining *DuPont* factors, the Board found them to be neutral. The

---

[2] *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973).

Board therefore concluded that there is no likelihood of confusion between Mr. Cutino's and Applicant's marks. The Board reiterated that it could not consider Mr. Cutino's NIGHTLIFE registration, even in the face of Applicant's admissions:

> While applicant admits in its answer that opposer owns the mark NIGHTLIFE, Answer ¶ 4, that is as far as applicant's admission goes, and because the registration for this mark is not of record, opposer is not entitled to any of the presumptions which arise out of a registration. In other words, there is no evidence concerning when opposer used NIGHTLIFE, whether the mark is still in use or what goods or services are or were offered under the mark. Applicant's admission is therefore not enough for us to consider the NIGHTLIFE mark in connection with opposer's likelihood of confusion claim.

Board Decision at 8, n.8.

Mr. Cutino timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

We review the Board's evidentiary rulings for abuse of discretion.[3] In this case, we find that the Board abused its discretion in disregarding Mr. Cutino's NIGHTLIFE registration. The Board's own procedures and this court's precedent recognize that an opposer's registration will be deemed to be of record if the applicant's answer contains admissions sufficient to establish the current status of the

---

[3] *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1391 (Fed. Cir. 2010).

registration and the plaintiff's ownership of the registration.[4]

Applicant's admissions in its answer are sufficient to treat the NIGHTLIFE registration as being part of the record. The Notice of Opposition specifically alleged that Mr. Cutino is the owner of, and would rely on, Registration No. 1908411 for the mark NIGHTLIFE. Notice of Opposition at ¶ 4, Opp. No. 91186025 (Aug. 22, 2008). While Applicant purported to admit only that Mr. Cutino is the owner of the "mark" NIGHTLIFE, Applicant did not deny that Mr. Cutino owns the corresponding pleaded registration. *See* Answer at ¶ 4, Opp. No. 91186025 (Jan. 2, 2009). An answer that fails to deny a portion of an allegation is deemed admitted as to that portion.[5]

Applicant's admission regarding ownership not only establishes current title, but also the current status of the NIGHTLIFE registration, i.e., that it is active. One technically does not own a registration that is not in force and effect.[6] We do not read Applicant's denial that the NIGHTLIFE registration is "subsisting" as a clear denial of the current status of the registration, particularly in view of the identical denial made with respect to Mr. Cutino's other two registrations for which he attached records establishing current status. *See id.* at ¶¶5–7. Hence, unlike *Hewlett-Packard Co. v. Olympus Corp.*, where an admission that the registrations "originally issued" to the opposer was insufficient to establish cur-

---

[4]    *See Tiffany & Co. v. Columbia Indus., Inc.* 455 F.2d 582, 585 (CCPA 1972); Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 704.03(b)(1)(A) Note.

[5]    *See* Fed. R. Civ. P. 8(b)(6); TBMP § 311.02(a).

[6]    *See* Trademark Manual of Examining Procedure (TMEP) § 812.

rent title,[7] here Applicant admitted current ownership and the active status of the pleaded registrations. The Board therefore committed legal error in ignoring the evidentiary effect of Applicant's admissions and abused its discretion in refusing to consider the registration for the NIGHTLIFE mark.[8]

On remand, we direct the Board to consider Mr. Cutino's NIGHLIFE registration and address the likelihood of confusion between the NIGHTLIFE mark and Applicant's mark. Mr. Cutino does not appeal, and therefore we do not disturb, the Board's other evidentiary rulings. We also do not address the remaining aspects of the Board's determination that Mr. Cutino does not challenge, namely, the likelihood of confusion between Applicant's mark and Mr. Cutino's LONG ISLAND'S NIGHTLIFE and NEW YORK'S NIGHTLIFE marks.

### VACATED AND REMANDED

COSTS

Each party shall bear its own costs.

---

[7]    931 F.2d 1551, 1554 (Fed Cir. 1991).

[8]    *See Tiffany*, 455 F.2d at 585 (Board erred in refusing to consider registrations when applicant did not deny opposer's ownership and admitted the existence of the pleaded registrations).