NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**CERVEJARIA PETROPOLIS SA,**
*Appellant*

**v.**

**AMBEV S.A.,**
*Appellee*

_____

2019-1132

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92059437.

_____

Decided: October 10, 2019

_____

MARY CATHERINE MERZ, Merz & Associates, PC, Oak Park, IL, for appellant.

DOUGLAS ANTHONY RETTEW, Finnegan, Washington, DC, for appellee. Also represented by PATRICK J. RODGERS; MORGAN ELIZABETH SMITH, Palo Alto, CA.

_____

Before PROST, *Chief Judge,* MOORE and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Cervejaria Petropolis SA ("CP") appeals the opinion of the U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB") granting Appellee Ambev S.A.'s ("Ambev") petition to cancel CP's Registration No. 3788757 for the mark FUSION, for "non-alcoholic beverage ingredients, namely, effervescent powder to be dissolved in liquid to produce an energy drink and hypertonic drink" ("the Registered Product"), due to abandonment, pursuant to 15 U.S.C. § 1064(3) (2012). *Ambev S.A. v. Cervejaria Petropolis SA*, No. 9205943, 2018 WL 4146176, at *1, *17 (T.T.A.B. Aug. 28, 2018); 15 U.S.C. § 1064(3) (providing for the cancellation of a mark "[a]t any time if the registered mark . . . has been abandoned"). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B) (2012). We affirm.

DISCUSSION

I. Standard of Review and Legal Standard

We review the TTAB's legal conclusions de novo and its findings of fact for substantial evidence. *Zheng Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1371 (Fed. Cir. 2018). "Substantial evidence is 'such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.'" *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1321 (Fed. Cir. 2014) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "Where two different conclusions may be warranted based on the evidence of record, the [TTAB's] decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007) (citation omitted).

A trademark may be cancelled "[a]t any time if the registered mark . . . has been abandoned." 15 U.S.C. § 1064(3). "Abandonment is a question of fact." *On-Line*

*Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000). Under the Lanham Act, a registered trademark may be "deemed to be 'abandoned'" when "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Because trademark registrations are presumed valid, the party seeking cancellation (the petitioner) bears the burden of proving abandonment by a preponderance of the evidence. *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark[.]"); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023 (Fed. Cir. 1989) ("[I]n a cancellation for abandonment . . . the petitioner bears the burden of proof."). The petitioner establishes a prima facie case of abandonment by showing "[n]onuse" of the trademark "for [three] consecutive years." 15 U.S.C. § 1127; *see On-Line*, 229 F.3d at 1087 ("The party seeking cancellation establishes a prima facie case of abandonment by showing proof of nonuse for three consecutive years." (citing 15 U.S.C. § 1127)). This "creates a rebuttable presumption that the trademark owner has abandoned the mark without intent to resume use." *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1391 (Fed. Cir. 2010) (citation omitted). The trademark owner may rebut this presumption by "produc[ing] evidence that he either used the mark during the statutory period or intended to resume or commence use." *Rivard v. Linville*, 133 F.3d 1446, 1449 (Fed. Cir. 1998) (citation omitted). "Use" requires "bona fide use" of the mark on the goods recited in the registration, in the United States, "made in the ordinary course of trade," and "not made merely to reserve a right in a mark." 15 U.S.C. § 1127; *see In re Jobdiva, Inc.*, 843 F.3d 936, 940 (Fed. Cir. 2016) ("A registration may be cancelled on grounds of abandonment when the mark has not been used for the goods or services specified in the registration for at least three years and there is no showing of an intent to resume use of the mark for those goods or services." (citations omitted)); *Imperial Tobacco Ltd. v. Philip Morris,*

*Inc.*, 899 F.2d 1575, 1579 (Fed. Cir. 1990) ("The terms 'use' and 'nonuse' mean use and nonuse in the United States.").

## II. Substantial Evidence Supports the TTAB's Determination that CP Abandoned the FUSION Mark

The TTAB found that Ambev had "established a prima facie case of abandonment based on at least three consecutive years [of] nonuse" of the FUSION mark, *Ambev*, 2018 WL 4146176, at *13, from "December 31, 2011 through July 15, 2015" (that is, more than three and a half years), *id.* at *17, and that CP had failed to rebut this prima facie case, having not produced "a scintilla of evidence or testimony" of intent to use or intent to resume or commence use of the mark during the same period, *id.* at *16. The TTAB concluded that CP had, accordingly, "abandoned its [FUSION] mark." *Id.* at *17. CP challenges the TTAB's finding, arguing that it is unsupported by substantial evidence because "a reasonable person would not have agreed with the [TTAB's] finding that Ambev's evidence established abandonment for three consecutive years," Appellant's Br. 13, and "would have found" instead, "that CP's evidence established an intent to resume use of the FUSION mark," *id.* at 22. We disagree with CP.

Substantial evidence supports the TTAB's finding that CP had not used or intended to resume use of the FUSION mark for at least three consecutive years. In response to Ambev's interrogatories, CP stated that at the time it acquired the FUSION mark, on October 27, 2011, it did not intend to use the mark for the Registered Product, *see* J.A. 257 ("[A]t the time it purchased the mark it wanted to sell the related liquid rather than powder product."), J.A. 267–70 (Trademark Rights Purchase Agreement); that "it does not export or ship any FUSION products into the [United States]," J.A. 256; and that it "does not advertise or promote its FUSION product[s] in the United States," J.A. 257. Further, in response to Ambev's request that CP produce "[d]ocuments sufficient to identify" any webpage or

blog "owned or operated" by CP that "contain[ed] or display[ed]" the FUSION mark or "refer[red] or relate[d]" to the Registered Product, CP responded that "there are no [responsive] documents." J.A. 276. In addition, supporting record evidence includes: twenty-nine excerpts from CP's website from December 2011 through January 2016, that make no reference to any FUSION product or FUSION mark, J.A. 176–248; testimony from Ambev's private investigator that she found no evidence of CP using the FUSION mark for the Registered Product in the United States through June 11, 2014 (the conclusion of her investigation), J.A. 84, 103–04; and a June 30, 2011, public corporate filing from CP's predecessor in interest indicating that it had discontinued sales of its FUSION mark registered products, J.A. 137–39. CP's admissions, corroborated by record evidence of nonuse for more than three years, is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that CP had not used the FUSION mark for the statutory period. *See Consol. Edison*, 305 U.S. at 229; *Cerveceria*, 892 F.2d at 1024 ("[W]hen a party must prove a negative, as in proving abandonment through nonuse," an inference of nonuse is proper so long as "the inference ha[s] an adequate foundation in proven fact.").

Further, the TTAB did not err in finding CP failed to establish use or intent to resume use. During the period of nonuse, CP provided only that it had recorded its acquisition of the FUSION mark with the USPTO, J.A. 264–70, and, based on uncorroborated interrogatory responses, used the FUSION mark "in connection with a pre-mixed energy drink" beginning in October 2014, J.A. 255. This does not establish use of the Registered Product in the ordinary course of trade, nor intent to resume such use. *See* 15 U.S.C. § 1127 (defining "use" as "bona fide use"); *Imperial Tobacco*, 899 F.2d at 1581 ("An averment of no intent to abandon is little more than a denial in a pleading[.]"). CP produced evidence suggesting use of the FUSION mark

beginning July 15, 2015, after more than three and a half consecutive years of nonuse, consisting primarily of an advertisement on a race car and driver jumpsuit at the Iowa Corn 300, J.A. 465–94, but without offering "testimony or evidence regarding what the FUSION mark on the jumpsuit or racecar identifie[d]," *Ambev*, 2018 WL 4146176, at *15. Use of a mark for an unidentified product, after more than three consecutive years of nonuse, without any evidence of intent to resume use during that period, does not establish use or intent to resume use. *See Cerveceria*, 892 F.2d at 1027–28 (holding that in the absence of evidence of intent to resume use during the period of non-use, the TTAB "may conclude the registrant has . . . failed to rebut the presumption of abandonment," even when there is evidence of intent to resume after the period of nonuse); *Imperial Tobacco*, 899 F.2d at 1582 (marketing efforts using the registered mark, but for products other than the registered product "did not excuse nonuse"). Accordingly, the TTAB did not err in finding CP had failed to establish use or intent to resume use of the FUSION mark.

CP's counterarguments are unpersuasive. First, while CP avers that "a reasonable person would have found that CP's evidence established an intent to resume use of the FUSION mark" because "CP's evidence was substantial," Appellant's Br. 22, this misapprehends the substantial evidence standard of review, *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."), and overstates CP's own evidence, *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939) ("Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established.").

Second, CP argues that "[t]he [TTAB] erred" when it declined to allow CP "to introduce . . . certain of its own interrogatory responses, and the documents produced in

connection therewith," into the record. Appellant's Br. 9. A "responding party" may introduce its own answers to interrogatories only if the "inquiring party" has "offered in evidence" "fewer than all of the . . . [responding party's] answers," and the additional answers "in fairness" should be "considered so as to make not misleading" the answers already in the record. 37 C.F.R. § 2.120(k)(5) (2007). The "responding party" must provide a "written statement explaining why [it] needs to rely upon each of the additional written disclosures[.]" *Id.* Here, while Ambev did not introduce all of CP's interrogatory answers, J.A. 249, CP did not establish why its additional answers should "be considered" to make answers already in the record "not misleading," 37 C.F.R. § 2.120(k)(5). CP merely asserted that "[s]ince [CP's] intent to use the FUSION mark and actual use of the FUSION mark are at issue," the answers and "relevant documents should be considered by the [TTAB]." J.A. 383–84. This is insufficient. CP was required to establish how the "additional written disclosures" clarified specific interrogatory answers already introduced into the record, to "make [them] not misleading." 37 C.F.R. § 2.120(k)(5); *see Holiday Inns, Inc. v. Monolith Enters.*, 212 U.S.P.Q. (BNA) 949, 1981 WL 48556, at *1 (T.T.A.B. Nov. 25, 1981) (explaining that "[i]t is not sufficient to simply notice reliance on all of the answers . . . and expect the [TTAB] to determine which, if any, of the answers originally relied on require explanation or clarification," rather "the specific answer or answers sought to be introduced . . . must be pinpointed and [its] relationship" to an existing answer on the record "must be shown"). Accordingly, the TTAB did not abuse its discretion when it declined to allow CP to introduce its own interrogatory responses into the record. *See* 37 C.F.R. § 2.120(k)(5) (providing that the TTAB "in its discretion, may refuse to consider the additional written disclosures or responses"); *Crash Dummy*, 601 F.3d at 1390 (explaining that we

"review[] [the TTAB's] evidentiary rulings for an abuse of discretion" (citation omitted)).[1]

CONCLUSION

We have considered CP's remaining arguments and find them unpersuasive. The Opinion of the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board is

**AFFIRMED**

---

[1]    CP argues, in the alternative, that it should have been allowed "to cure its explanation under 37 C.F.R. § 2.122(g)." Appellant's Br. 12. CP did not raise this argument before the TTAB. *See generally* J.A. 14–21, 571, 578. It is, accordingly, waived. *See Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1175 (Fed. Cir. 2019) (holding that arguments not raised before the TTAB, but "for the first time on appeal," are "waived").