# United States Court of Appeals for the Federal Circuit

---

**IN RE: JOBDIVA, INC.,**
*Appellant*

---

2015-1960

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92050828.

---

Decided: December 12, 2016

---

DANIEL I. SCHLOSS, Greenberg Traurig LLP, New York, NY, argued for appellant. Also represented by MASAHIRO NODA.

MARY BETH WALKER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor Michelle K. Lee. Also represented by THOMAS W. KRAUSE, CHRISTINA HIEBER.

---

Before PROST, *Chief Judge,* DYK, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

In this trademark case, we must decide whether JobDiva, Inc. used its marks in connection with personnel placement and recruitment services, or whether the

Trademark Trial and Appeal Board correctly held that JobDiva failed to do so because it used its marks on software offerings, without more. The Board required JobDiva to prove that it used its marks on more than just software because its software sales alone could not, in the Board's view, constitute personnel and recruitment services. We disagree with the Board's approach. The proper question is whether JobDiva, through its software, performed personnel placement and recruitment services and whether consumers would associate JobDiva's registered marks with personnel placement and recruitment services, regardless of whether the steps of the service were performed by software. Because the Board must visit that question in the first instance, we vacate its decision and remand for further consideration.

BACKGROUND

I.

On June 8, 2004, the United States Patent and Trademark Office issued Registration No. 2851917 ("the '917 registration") to JobDiva for the service mark JOBDIVA for "personnel placement and recruitment" services. On November 8, 2005, it issued Registration No. 3013235 ("the '235 registration") to JobDiva for the service mark shown below:



for "personnel placement and recruitment services; computer services, namely, providing databases featuring recruitment and employment, employment advertising, career information and resources, resume creation, resume transmittals and communication of responses thereto via a global computer network." J.A. 498; *see also* J.A. 52–53.

JobDiva uses its trademarks in connection with its product and service offerings, which its website describes as "the largest, ultimate, full service solution for the staffing industry with an extensive suite of products & tools, front to back end, covering all staffing needs." J.A. 117. JobDiva offers, in the words of its Chief Executive Officer, "an applicant tracking system for recruiting departments, [and] for HR departments seeking to staff people." J.A. 212. JobDiva uses software to automatically provide these offerings to clients.

JobDiva's software generally provides a database of employment applications that a hiring manager or recruiter might use to fill a job opening. J.A. 223. The software performs multiple functions to facilitate this job-filling process. It employs automated "harvesters" to find potential job candidates by automatically scraping job boards and aggregating relevant resumes. J.A. 223, 461–63. And it reviews and analyzes job candidates' resumes to determine if any candidate's qualifications match the job's requirements. J.A. 393. It thus "replaces a tedious manual search" previously performed by hiring managers or recruiters. J.A. 462–63. JobDiva also helps hiring managers directly communicate with job candidates. For instance, it permits hiring managers to post job openings in a job candidate portal. J.A. 221. This candidate portal may also be embedded into a company's website. J.A. 13. The software further assists job candidates by recommending potential openings to the candidates based on skillsets and provides them automated resume feedback. J.A. 221.

In many circumstances, JobDiva renders these offerings on a software-as-a-service, or "SaaS," basis to its customers. As the Board explained, "Software as a Service (SaaS) leverages software by delivering it over the Internet." *JobDiva, Inc. v. Jobvite, Inc.*, Cancellation No. 92050828, 2015 WL 3542849, at *1 (T.T.A.B. May 20, 2015) ("*JobDiva Rehearing*"). The Board noted that SaaS

is "also known as cloud computing." *Id.* at \*2. "Cloud computing," according to the Board, "is defined as 'computing operations carried out on servers that are accessed through the Internet, rather than on one's own personal computers.'" *Id.* at \*2 (quoting Dictionary of Computer and Internet Terms 434 (11th ed. 2013)). By hosting its software remotely, JobDiva provides its clients a product without the need to download "cumbersome software . . . onto office desktops or laptops." J.A. 474.

As the Board explained, JobDiva's SaaS model of software delivery also changes the way that users interact with JobDiva: "The users pay for the computing as a service rather than owning the machines and software to do it." *JobDiva Rehearing*, 2015 WL 3542849, at \*2 (quoting Dictionary of Computer and Internet Terms, *supra*, at 434). Unlike a locally installed software program, which might be downloaded from the Internet or a disk, JobDiva's software resides on remote servers and customers access it via the Internet.

## II.

The Board cancelled JobDiva's marks in a proceeding that JobDiva originally requested. JobDiva initially petitioned the Board to cancel a registration owned by Jobvite, Inc., which is no longer a party to this case. JobDiva asserted, *inter alia,* a likelihood of confusion between Jobvite's and JobDiva's service marks. To establish its claim, JobDiva asserted ownership of its two marks introduced above.

Jobvite counterclaimed, petitioning the Board to cancel JobDiva's trademark registrations by alleging that JobDiva failed to perform personnel placement and recruitment services. Jobvite requested that the Board cancel the '917 registration in whole and its '235 registration in part. Notably, Jobvite did not submit affirmative evidence of abandonment or challenge that JobDiva used

the '235 registration to identify the other services specified in its registration.

A.

The Board granted Jobvite's counterclaim, cancelling the '917 registration in whole and the '235 registration in part. *JobDiva, Inc. v. Jobvite, Inc.*, Cancellation No. 92050828, 2015 WL 2170162 (T.T.A.B. Apr. 16, 2015). The Board explained that under Section 45 of the Trademark Act, "[a] mark shall be deemed to be 'abandoned' . . . [w]hen its use has been discontinued with intent not to resume such use." *Id.* at *7 (quoting 15 U.S.C. § 1125).

The Board started its analysis of JobDiva's use of its marks by defining the scope of JobDiva's registrations for "personnel placement and recruitment" services and consulting dictionary definitions for each word. *Id.* at *6. Combining these definitions, the Board found that "personnel placement and recruitment" meant "that [JobDiva] is finding and placing people in jobs at other companies or providing personnel staffing services for others." *Id.*

To prove its use of the marks in connection with personnel placement and recruitment, JobDiva had submitted screenshots from its website and a declaration of its CEO, Diya Obeid. But the Board found JobDiva's evidence insufficient, explaining that "[t]here [was] no reference . . . to Petitioner's performance of personnel placement and recruitment services other than supplying Petitioner's software." *Id.* The Board concluded that, "[s]ince there is no evidence of use of Petitioner's marks in connection with 'personnel placement and recruitment' services, there has been nonuse for three consecutive years." *Id.* The Board therefore cancelled the '917 registration in whole and amended the '235 registration to delete "personnel placement and recruitment." *Id.*

B.

JobDiva petitioned the Board to reconsider its judgment, arguing that "the Board made erroneous findings of fact because there is 'abundant evidence of record' that shows Petitioner providing the service of 'finding and placing people in jobs at other companies or providing personnel staffing services for others.'" *JobDiva Rehearing*, 2015 WL 3542849, at *1. The Board again disagreed, finding that JobDiva had failed to prove use of its marks for "personnel placement and recruitment" services.

The Board explained that "[a] term that *only* identifies a computer program does not become a service mark merely because the program is sold or licensed in commerce." *Id.* at *2. "Such a mark does not serve to identify a service unless it is also used to identify and distinguish the service itself, as opposed to the program." *Id.* The Board counseled, however, that "it is important to review the record carefully to determine the manner of use of the mark and the impression it is likely to make on purchasers." *Id.*

The Board found JobDiva's evidence of use insufficient because JobDiva only provided software, but not additional "personnel placement and recruitment" services. The Board explained that it "looked for evidence that Petitioner was rendering 'personnel placement and recruitment services' for others rather than merely providing a software solution for clients to use in performing their 'personnel placement and recruitment' activities." *Id.* The Board criticized JobDiva for "confus[ing] the service of providing a software solution for personnel placement and recruitment with actually rendering personnel placement and recruitment services." *Id.* at *3. The Board repeatedly faulted JobDiva's evidence as proving only that JobDiva offered software for personnel placement and recruitment, instead of providing that software *in addition* to offering personnel placement and

recruitment services. *Id.* at \*3–4. Indeed, the Board required JobDiva to prove that "it is rendering 'personnel placement and recruitment' *as an independent activity distinct* from providing its software to others." *Id.* at \*4 (emphasis added).

The Board further made clear that JobDiva did not use the marks for services, even though the software itself could perform the "personnel placement and recruitment" functions. JobDiva's CEO had testified that JobDiva's software actually performs personnel placement and recruitment services:

> "JobDiva aggregates resumes for its clients, employers, from the job boards . . . they apply to job boards to source candidates and that is usually a manual exercise," but JobDiva can "search the job board's sites and databases for candidates on behalf of employers who are subscribing to these job boards, so it's almost like an outsource function that JobDiva performs in the recruiting process."

*Id.* at \*3 (quoting J.A. 223). The Board dismissed this evidence, however, because the testimony did "not provide any evidence that Petitioner renders 'personnel placement and recruitment services' other than by providing the software that performs those functions." *Id.* Thus, the Board ultimately found that JobDiva had failed to establish "that it is rendering 'personnel placement and recruitment' services for others *separate and apart* from providing its software." *Id.* (emphasis added).

The Board denied JobDiva's request for reconsideration, and JobDiva appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Section 1(a) of the Lanham Act requires that an application to register a trademark must include "specification of . . . the goods in connection with which the mark is

used." 15 U.S.C. § 1051(a). The Supreme Court has recognized that "[t]he usages listed in [an] application . . . are critical" because of, *inter alia*, the legal rights that trademark registration conveys. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1300 (2015). As such, a registrant must use its mark in accordance with goods and services recited in the registration. 15 U.S.C. § 1064(3); *see also* 15 U.S.C. § 1058(b)(1)(B).

A registration may be cancelled on grounds of abandonment when the mark has not been used for the goods or services specified in the registration for at least three years and there is no showing of an intent to resume use of the mark for those goods or services. 15 U.S.C. § 1127; *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000). Because service mark registrations are presumed valid, the party seeking cancellation of such registration must "establish[] a prima facie case of abandonment by showing proof of nonuse for three consecutive years." *On-Line Careline*, 229 F.3d at 1087. Whether a mark has been used to identify a particular service is a question of fact. *In re Advert. & Mktg. Dev., Inc.*, 821 F.2d 614, 621 (Fed. Cir. 1987). Likewise, whether a trademark holder has abandoned its use of a mark is a question of fact. *On-Line Careline*, 229 F.3d at 1087. We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 964 (Fed. Cir. 2015).

We agree with the Board's initial observation that, with modern technology, the line between services and products sometimes blurs. *See JobDiva Rehearing*, 2015 WL 3542849, at *2. As the Board correctly observed, "[i]n today's commercial context if a customer goes to a company's website and accesses the company's software to conduct some type of business, the company may be rendering a service, even though the service utilizes software." *Id.* (quoting *In re Ancor Holdings*, No. 76213721, 2006 WL 1258813 (T.T.A.B. April 28,

2006)).  But a mark used with a web-based offering may equally identify the provision of software, rather than a service.  For these reasons, careful analysis is required to determine whether web-based offerings, like those JobDiva provides, are products or services: "[I]t is important," as the Board properly noted, "to review all the information in the record to understand both how the mark is used and how it will be perceived by potential customers." *JobDiva Rehearing,* 2015 WL 3542849, at *2.

But while the Board rightly recognized that it is crucial to carefully review the manner of use of the marks and their likely impression on purchasers, *id.*, it nevertheless appeared to apply a bright-line rule requiring JobDiva to show that it performed the "personnel placement and recruitment" services in a way other than having its software perform those services.  It stated, for example, that "there is no testimony or evidence that supports [JobDiva's] claim that it is rendering 'personnel placement and recruitment' *as an independent activity distinct* from providing its software to others."  *Id.* at *4 (emphasis added).  The Board repeatedly faulted JobDiva for failing to prove that it offered personnel placement and recruitment services *in addition* to its provision of software.  *Id.* at *3 ("The references on Petitioner's web sites show that Petitioner is supplying 'personnel placement and recruitment' software, not that Petitioner itself is rendering 'personnel placement and recruitment' services for others."); *id.* at *4 ("Petitioner's 'harvesters' are functions or capabilities of the JobDiva software, not activities performed by Petitioner for the purpose of offering 'personnel placement and recruitment services' for others.").  In holding JobDiva to that standard, the Board erred in its understanding of the law.

Even though a service may be performed by a company's software, the company may well be rendering a service.  For example, in *On-Line Careline*, we held that AOL had used its ONLINE TODAY mark in connection

with services, even though those services were provided by software. 229 F.3d at 1088. AOL had used its mark in connection with software that "provided its users with 'access' to its service through on-screen menu items." *Id.* We affirmed the Board's finding that AOL used its mark to identify the services described in the registration: "providing access to online computer services offering computer-industry news, commentary and product reviews." *Id.* We explained that, "[i]n a very literal sense, the subject mark was the designation by which AOL provides users access to the Internet news and information service." *Id.* At bottom, we recognized that software may be used by companies to provide services. *Id.* Indeed, here the '235 registration for "computer services, namely, providing databases featuring recruitment and employment, employment advertising, career information and resources, resume creation, resume transmittals and communication of responses thereto via a global computer network," remains unchallenged.

To determine whether a mark is used in connection with the services described in the registration, a key consideration is the perception of the user. *See Lens.com, Inc. v. 1-800 Contacts, Inc.,* 686 F.3d 1376, 1381–82 (Fed. Cir. 2012). The question is whether a user would associate the mark with "personnel placement and recruitment" services performed by JobDiva, even if JobDiva's software performs each of the steps of the service.[1] In other words,

---

[1] We note that JobDiva, like any entity, may register its marks to identify both software and services performed by software. 37 C.F.R. § 2.86 ("In a single application for a trademark, service mark, and/or collective mark, an applicant may apply to register the same mark for goods, services, and/or a collective membership organization in multiple classes."). For example, JobDiva

the question is whether the evidence of JobDiva's use of its marks "sufficiently creates in the minds of purchasers an association between the mark[s] and [JobDiva's personnel placement and recruitment] services." *Ancor Holdings*, 2006 WL 1258813, at *3.

This "is a factual determination that must be conducted on a case-by-case basis," and there are many case-specific factors the Board might examine. *Lens.com,* 686 F.3d at 1381–82. For example, in this case, the Board should consider the nature of the user's interaction with JobDiva when using JobDiva's software, as well as the location of the software host. If JobDiva sells its software to a customer who hosts the software on its own website and a third-party user's interactions appear to be with the customer (as opposed to JobDiva), it is unlikely that the customer or the third-party user would associate the JOBDIVA mark with a service performed by JobDiva. But if the software is hosted on JobDiva's website such that the user perceives direct interaction with JobDiva during operation of the software, a user might well associate JobDiva's marks with personnel "placement and recruitment" services performed by JobDiva. The purchasers' acquiring ownership in JobDiva's software likely will preclude a finding that JobDiva has rendered services, unless JobDiva's activities after the sale create the perception that JobDiva is in fact providing services.

The ultimate question here is this: whether purchasers would perceive JobDiva's marks to identify "personnel placement and recruitment" services. Because that question is a factual one, the Board must answer it in the first instance.

---

might use its marks to identify software sold to some customers, but those uses do not somehow negate other uses of the same marks to identify service offerings.

CONCLUSION

Because the Board applied the wrong legal standard, we vacate its judgment and remand for further consideration in light of this opinion.

**VACATED AND REMANDED**