This Opinion Is a
Precedent of the TTAB

Mailed: January 10, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Pitney Bowes, Inc.*

————

Serial No. 86502157

————

Kathryn Grant Belleau, Esq.
for Pitney Bowes, Inc.

April Roach, Trademark Examining Attorney, Law Office 115,
Daniel Brody, Managing Attorney.

————

Before Cataldo, Greenbaum, and Lynch,
Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

## I.  Background

Pitney Bowes, Inc. ("Applicant") seeks registration on the Principal Register of the

mark  for:

> Mailing services, namely, postal delivery services for mail; postal services, namely, postal delivery services for letters and packages; parcel delivery; packaging materials for transportation; delivery of mail to post offices for posting; shipping of mail, parcels and packages; providing online shipping information, namely, providing online information about the shipping of packages; providing information in the field of residential postal code status and confirmation; providing an internet portal permitting users access to shipping and tracking of packages and managing mail, namely, providing an online portal featuring information in the field of package and mail shipping and delivery; global shipping and delivery services, for cross-border sales, namely, pickup, transportation, and delivery of freight packages by all available means in International Class 39.[1]

Applicant initially based the application on an allegation of its bona fide intent to use the mark in commerce. After the notice of allowance issued, Applicant filed a statement of use with a specimen that Applicant described as a webpage. As reproduced below, the specimen shows the mark next to the wording "pitney bowes" in the upper left corner of a webpage about the "mail&go Postal Kiosk[, which] provides self-service access to a broad range of mail and shipping services":

---

[1] Application Serial No. 86502157 was filed July 1, 2014, based on Applicant's assertion of a bona fide intent to use the mark under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). The mark is described as "a circle containing four partial circles on the left and three partial circles on the right, divided by the lower case letters 'p' and 'b', all resembling a series of concentric circles." Color is not claimed as a feature of the mark.



The Examining Attorney refused registration under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051 and 1127, on the ground that the specimen does not show Applicant's mark in use in connection with any of the recited services.[2] The

---

[2] TSDR May 18, 2016 Office Action at 1.

Office Action explained that "the specimen is a webpage describing a self-service kiosk that consumers use to mail and ship items, but not that applicant itself provides these services."[3] In the response submitted and signed by Applicant's in-house counsel, Applicant traversed the refusal and stated that "[t]hese kiosks are furnished by Applicant and are placed in different locations for use by consumers. Consumers use the kiosk to place postage on a letter or package, and then place that [letter or package] in the receptacle that is part of the kiosk system **for Applicant to pick up the letter or package and place it in the mail stream for delivery**."[4]

The Examining Attorney then made the refusal final, providing the following rationale:

> The specimen does not show that applicant actually provides the mailing and shipping services, rather it shows only that applicant provides a kiosk where a user can perform activities such as purchase postage, weigh letters and packages and compare rates. There is no indication on the specimen that applicant provides any goods or services other than the kiosk itself.[5]

Applicant requested reconsideration and submitted a substitute specimen identified as a webpage. The substitute specimen, reproduced below, shows the mark next to the wording "pitney bowes" in the upper left corner of a webpage about the "SendSuite Xpress multi-carrier parcel system":[6]

---

[3] *Id.*

[4] TSDR November 18, 2016 Response to Office Action at 1 (emphasis added).

[5] TSDR November 21, 2016 Office Action at 1.

[6] TSDR March 1, 2017 Request for Reconsideration at 2.



The Examining Attorney denied the request for reconsideration, noting that the substitute specimen "shows that applicant provides a software product but not that applicant provides the identified services."[7] Applicant appealed, and the appeal is fully briefed.

---

[7] TSDR March 8, 2017 Denial of Request for Reconsideration at 1.

As explained below, we reverse the refusal to register because we find the original specimen to be acceptable, and find that the explanation submitted by Applicant to the Examining Attorney corroborates the content of the original specimen.

## II.     Use of the Mark for the Services

Under Section 45 of the Trademark Act, 15 U.S.C. § 1127, a service mark is used in commerce "when it is used or displayed in the sale or advertising of services." *See also* Trademark Rule 2.56(b)(2), 37 C.F.R. § 2.56(b)(2). "To determine whether a mark is used in connection with the services described in the [application], a key consideration is the perception of the user." *In re JobDiva, Inc.*, 843 F.3d 936, 121 USPQ2d 1122, 1126 (Fed. Cir. 2016). Relevant to Applicant's specimens in this case, the webpage must show the mark used or displayed as a service mark in advertising the services. *See In re WAY Media, Inc.*, 118 USPQ2d 1697, 1698 (TTAB 2016). Showing only the mark with no reference to, or association with, the services does not show service mark usage. *In re Adair,* 45 USPQ2d 1211, 1214-15 (TTAB 1997); *In re Duratech Ind. Inc.,* 13 USPQ2d 2052, 2054 (TTAB 1989). For advertisement specimens such as Applicant's webpages, "[i]n order to create the required 'direct association,' the specimen must not only contain a reference to the service, but also the mark must be used on the specimen to identify the service and its source." *In re Osmotica Holdings Corp.*, 95 USPQ2d 1666, 1668 (TTAB 2010). Thus, an acceptable specimen must show "some direct association between the offer of services and the mark sought to be registered therefor." *In re Universal Oil Prods. Co.*, 476 F.2d 653, 177 USPQ 456, 457 (CCPA 1973).

The Examining Attorney takes the position that Applicant does not provide the identified services, but instead that "[A]pplicant provides a product that a consumer can use to mail or ship packages and letters…."[8] Applicant contends that the Examining Attorney's view stems from a misunderstanding of its services. In its briefing, Applicant asserts that: (1) the original specimen supports postal delivery services for letters and packages; and global shipping and delivery services, for cross-border sales, namely, pickup, transportation, and delivery of freight packages by all available means; and (2) the substitute specimen supports providing online shipping information, namely, providing online information about the shipping of packages; and providing an internet portal permitting users access to shipping and tracking of packages and managing mail.

The original specimen displays the mark directly above the wording "Outsourced Mailing Services." The webpage text also states that the postal kiosk pictured and described on the webpage "allows users to mail bills [and] ship packages." The Examining Attorney infers from the webpage reference to third-party services, such as those of USPS (the U.S. Postal Service), that the only services provided through the kiosk are not Applicant's. However, Applicant clarified in its November 18, 2016 Response to Office Action that *it* provides some of the referenced "Mailing Services," in that it picks up letters and packages left by users in the kiosk receptacle and delivers them "into the mail stream."[9]

---

[8] 6 TTABVUE 5 (Examining Attorney's Brief).

[9] TSDR November 18, 2016 Response to Office Action at 1 (emphasis added).

Both precedent and examination guidance make clear that in assessing the specimens, consideration must be given not only to the information provided by the specimen itself, but also to any explanations offered by Applicant clarifying the nature, content, or context of use of the specimen that are consistent with what the specimen itself shows. *See In re DSM Pharm., Inc.*, 87 USPQ2d 1623, 1626 (TTAB 2008) ("In determining whether a specimen is acceptable evidence of service mark use, we may consider applicant's explanations as to how the specimen is used, along with any other available evidence in the record that shows how the mark is actually used."); *see also* TMEP § 1301.04 (October 2017) ("[A] specimen description submitted by the applicant typically helps clarify the manner in which the mark is used in commerce, and the more explanation the applicant provides initially, the more helpful it is to the examining attorney's analysis. Thus, applicants are encouraged to provide a specimen description and explain how the applicant renders or provides the services…."). Here, the response signed by Applicant's in-house counsel clarified the specimen's direct reference to "Mailing Services." *Cf. In re U.S. Tsubaki, Inc.*, 109 USPQ2d 2002 (TTAB 2013) (disregarding outside counsel's conclusory unverified statements made without proper foundation regarding marketing of goods).

Considering the original specimen, we find that it supports Applicant's identified "postal delivery services for letters and packages," given the proximity of Applicant's mark to the reference to "Outsourced Mailing Services," along with the other explanatory text on the webpage (*e.g.,* "Kiosk allows users to mail bills [and] ship packages"). While the Examining Attorney reasonably found the specimen unclear as

to whether Applicant, rather than a third party, provides the services, Applicant's explanation of the specimen and how Applicant provides the outsourced mailing services referenced on the specimen resolved the ambiguity, and the refusal should not have been maintained. We find that the original specimen demonstrates use of the mark in a manner that creates in the minds of potential consumers a direct association between the mark and at least some of the services in the class, and the explanation corroborates this in a manner that removes any doubt. *See* Trademark Rule 2.56(a), 37 C.F.R. § 2.56(a); *see also* TMEP § 1301.04(c) (specimen must "show[] direct association between the mark and at least one of the identified services in each class").[10]

In light of our holding that consumers would perceive Applicant's mark as shown on the original specimen as a source indicator for postal delivery services for letters and packages, we need not address Applicant's substitute specimen.

III.   Conclusion

**Decision**: We deem Applicant's original specimen acceptable and therefore reverse the refusal to register Applicant's mark.

---

[10] Nonetheless, if the record were to raise doubt regarding an applicant's use of the mark in connection with other services identified in a class, and a specimen of record does not support a finding of such use by that applicant, Trademark Rule 2.61(b), 37 C.F.R. § 2.61(b), permits an examining attorney to require "such information … and such additional specimens as may be reasonably necessary to the proper examination of the application."