NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**SUNBIO CORPORATION,**
*Appellant*

**v.**

**BIOGRAND CO., LTD.,**
*Appellee*

_____

2021-1433

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92067124.

_____

Decided:  December 14, 2021

_____

ALEXANDER J. FARRELL, Best & Flanagan, LLP, Minneapolis, MN, argued for appellant.

BUB-JOO LEE, Lee Anav Chung White Kim Ruger & Richter LLP, Los Angeles, CA, argued for appellee.  Also represented by THOMAS H. RYOU, Ryou Law, Washington, DC.

_____

Before MOORE, *Chief Judge*, SCHALL and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Sunbio Corporation appeals the Trademark Trial and Appeal Board's cancellation of Sunbio's "BF-7" mark for nutritional supplements. The Board cancelled the mark on the basis that Sunbio was not the owner of the BF-7 mark at the time of Sunbio's application for registration because it had not used the mark. Sunbio appeals the cancellation on two grounds: (1) it did not have notice of the cancellation theory relied on by the Board until petitioner Biogrand Co. Ltd.'s reply brief at trial; and (2) substantial evidence does not support the Board's finding of non-use. We conclude that Sunbio had sufficient notice of the argument ultimately accepted by the Board in cancelling Sunbio's mark and that substantial evidence supports the Board's finding that Sunbio was not the owner of the mark due to non-use. We therefore affirm.

BACKGROUND

I

The trademark at issue in this appeal is United States Trademark Registration No. 4,932,313 for the term "BF-7," used for a variety of nutritional supplement goods. J.A. 27. Sunbio filed its application to register the term BF-7 with the United States Patent and Trademark Office in August 2015. Sunbio filed its application based on its alleged use of the mark in commerce. J.A. 1096 (listing "SECTION 1(a)" as the filing basis); 15 U.S.C. § 1051(a) (Section 1(a) allowing application for registration of a trademark "used in commerce"); *cf.* 15 U.S.C. § 1051(b) (alternatively allowing registration based on a "bona fide intention to use trademark").

To demonstrate its alleged use of the BF-7 mark in commerce, Sunbio submitted two photographs of a product as a specimen:




J.A. 1101–02; J.A. 14. Although the two photos showed the term BF-7 being used on a nutritional supplement—specifically, a supplement containing the ingredient Silk Fibroin, known as BF-7—neither photograph included any reference to Sunbio. Instead, the product was colorfully labeled with the name "SMARTNUTRI," a company that was founded and formerly controlled by Thomas Chang. J.A. 1959 (Chang Dep. 107:3–11); J.A. 1952 (Chang Dep. 78:2–4). Although Sunbio was also founded by Mr. Chang (who is also currently Sunbio's CEO), the two are separate business entities. J.A. 1210–11.

For a number of years, SmartNutri sold nutritional products, including supplements with Silk Fibroin in Korea. The supplier for the raw ingredient of BF-7 for both SmartNutri and Sunbio was a Korean company called BrainOn, Inc. BrainOn was founded by a former employee of Biogrand, the party that petitioned for cancellation of Sunbio's registration in the proceeding under review in this appeal. J.A. 1253. Biogrand claims (without dispute from

Sunbio) that it was the originator of the term BF-7—which stands for "BRAINFACTOR-7"—and that it has been using the BF-7 mark in Korea since 2004. Appellee's Br. 6 (citing J.A. 1247 (declaration of the Director of Biogrand)). Around the 2015 to 2016 timeframe, Biogrand and BrainOn were engaged in a legal dispute regarding Biogrand's intellectual property. Appellant's Br. 5 (citing J.A. 1962 (Chang Dep. 120:13–21)).

This dispute between Biogrand and BrainOn (Sunbio and SmartNutri's supplier) led to serious consequences for SmartNutri due to SmartNutri's sales activities for BF-7 products. In early 2016, SmartNutri was raided in Korea by the police and criminally charged for its actions regarding certain statements advertising BF-7 on its website. *Id.* (citing J.A. 1946 (Chang Dep. 57:12–25)); *see also* J.A. 1953–54 (Chang Dep. 85:16–87:22). SmartNutri shut down shortly thereafter towards the end of 2016. It was during this same timeframe that Sunbio filed its trademark application for the term BF-7 in the United States.

II

Biogrand petitioned the PTO for cancellation of Sunbio's BF-7 registration in October 2017. J.A. 33–58. Biogrand included several grounds for cancellation, including that Sunbio "was not, at the time of the filing of [Sunbio's] Application, the rightful owner of the [BF-7] Mark for the goods identified in the Registration." J.A. 39. Sunbio filed an answer to Biogrand's petition. J.A. 59–67. Both sides moved for summary judgment and the motions were denied. J.A. 465–78. Under the Board's procedures in a cancellation proceeding, the parties filed trial briefs— petitioner's main brief, registrant's main brief, and petitioner's reply—and the Board held an oral hearing. *See* Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 800 *et seq.*

The Board granted Biogrand's petition for cancellation on the sole basis that Sunbio was not the owner of the BF-7

mark at the time it filed its registration application. *Biogrand Co. v. Sunbio Corp.*, No. 92067124, 2020 WL 6255442, at \*3 (T.T.A.B. Oct. 21, 2020) (*Board Decision*). The Board did not address Biogrand's alternative theories for cancellation.

Sunbio appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

On appeal, Sunbio makes two arguments. First, Sunbio argues it had no notice of Biogrand's theory that SmartNutri, rather than Sunbio, was the owner of the BF-7 mark until Biogrand's reply brief before the Board. According to Sunbio, this lack of notice warrants reversal. Second, Sunbio argues that substantial evidence does not support the Board's factual determination that Sunbio was not the owner of the BF-7 mark at the time of its registration based on the theory that the record evidence of use in commerce pointed not to Sunbio, but to SmartNutri instead. As explained below, we disagree with Sunbio on both points and affirm.

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *In re Jobdiva, Inc.*, 843 F.3d 936, 940 (Fed. Cir. 2016). Whether a mark has been used to identify a particular good or service is a question of fact. *Id.*; *see also Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 1028 (Fed. Cir. 2017) ("In a priority dispute, the Board's determination whether a trademark has been appropriated by first use in commerce is a fact question that we review for substantial evidence.").

## I

Sunbio's lead argument on appeal is procedural. Sunbio contends that it was not aware of Biogrand's theory that SmartNutri was the owner of the BF-7 mark until Biogrand's reply brief before the Board and therefore Sunbio

had "no meaningful opportunity to address it." Appellant's Br. 12–13. Thus, according to Sunbio, the Board's reliance on this waived theory warrants reversal. *Id.* (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). It is unclear whether Sunbio's argument rests on principles of waiver or notice and opportunity to respond under the Administrative Procedure Act. In addition, Biogrand suggests that the APA's notice provisions do not apply to Trademark Trial and Appeal Board proceedings. But we need not resolve either of these issues because, whether we view this issue as one of waiver or notice under the APA, we disagree with Sunbio based on review of the record below.

At the outset, we note that neither party identifies the applicable standard of review. The Board's rules address waiver. *See* TBMP § 801.01 ("If a party fails to reference a pleaded claim or affirmative defense in its brief, the Board will deem the claim or affirmative defense to have been waived."). Typically, we give deference to the Board's decisions related to a party's compliance with the Board's own rules. *See Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016) ("Decisions related to compliance with the Board's procedures are reviewed for an abuse of discretion."); *Dell Inc. v. Acceleron, LLC*, 884 F.3d 1364, 1369–70 (Fed. Cir. 2018) (applying abuse of discretion standard in evaluating agency's refusal to consider "untimely argument"). Accordingly, we review the Board's decision to consider the issue of Sunbio's ownership—and whether the activities pointed to by Sunbio were, in fact, attributable to SmartNutri—for an abuse of discretion. We review an agency's compliance with the notice provisions of the APA de novo. *See In re IPR Licensing, Inc.*, 942 F.3d 1363, 1369 (Fed. Cir. 2019) (citing *In re NuVasive, Inc.*, 841 F.3d 966, 970 (Fed. Cir. 2016)).

Because Sunbio's argument is procedural, a more detailed review of the record and proceedings that led to the Board's cancellation is helpful. Starting with the

registration itself, the right to register a trademark at the federal level is based on ownership of the trademark, and the ownership of a mark is established through the registrant's use in commerce. *See* 15 U.S.C. § 1051(a)(1); *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1381 (Fed. Cir. 2015). In its 2015 application to register the term "BF-7," Sunbio alleged that it owned the mark because it had used it in commerce prior to its application. J.A. 52–53. In support of this claim of use, Sunbio submitted two pictures (shown above) as a specimen. J.A. 1101–02. The PTO accepted Sunbio's uncontested claims of use and registered Sunbio's mark.

A year-and-a-half later, in October 2017, BiograND petitioned for cancellation of Sunbio's registration arguing, among other things, that "Registrant [Sunbio] is not, and was not, at the time of the filing of Registrant's Application, the rightful owner of the Mark for the goods identified in the Registration." J.A. 39 (¶ 28); *see* 15 U.S.C. § 1064 (describing "Cancellation of registration"). Sunbio's answer to BiograND's petition summarily denied this allegation. J.A. 63 (¶ 28). The parties then engaged in the normal course of discovery before the Board. *See* TBMP § 400 *et seq.*

After discovery, parties to a TTAB cancellation proceeding typically introduce evidence and then file "briefs on the case" that act as trial briefs. TBMP §700 *et seq.*; *id.* at § 800 *et seq.* Here, BiograND, as petitioner, filed its opening brief first. J.A. 2289–2331. This is the filing that Sunbio argues was deficient, justifying reversal on appeal. Examining this brief, we agree with the Board that two sections of the brief are relevant to BiograND's argument that the specific instances of use pointed to by Sunbio as establishing its ownership actually pointed to SmartNutri instead, thus undermining Sunbio's claim of ownership. *Board Decision*, 2020 WL 6255442, at \*7 & n.21 (citing J.A. 2301–02, 2328–29).

The first section, located in Biogrand's background "Statement of Facts," describes the relationship between Thomas Chang, Sunbio, and SmartNutri, and analyzes the preparation of the specimen photographs that Sunbio presented to the PTO as allegedly evidencing Sunbio's use of the mark. *See* J.A. 2301–02. There, Biogrand described SmartNutri's engagement of Medience Co. Ltd., an unrelated third-party Korean manufacturer, to manufacture the specimen that Sunbio submitted as evidence of its own use in its registration. J.A. 2301. According to Biogrand's brief, those specimen products were produced "for SmartNutri" and "Medience did not work with, report to, or sell products to Registrant Sunbio." J.A. 2302. Furthermore, Biogrand contended that SmartNutri designed the packaging and labeling for the specimen. *Id.* Thus, this section directly contended that the specimen submitted by Sunbio to the PTO as evidence of its use of the term BF-7 was actually attributable to SmartNutri.

Although this contention was in the background section of Biogrand's opening brief, Sunbio recognized it as an argument against Sunbio's claim of ownership, showing that Sunbio was on notice of the cancellation theory ultimately adopted by the Board. Specifically, in the section of Sunbio's response brief titled "Petitioner Has Not Established Non-Use by Sunbio," Sunbio countered Biogrand's argument that Sunbio was not involved in the manufacture of the specimen product made by Medience. J.A. 2353–54. In this section of its brief, Sunbio attempted to minimize the testimony of a Medience representative who identified SmartNutri, rather than Sunbio, as being involved in the manufacture of the specimen. Most telling is the fact that, for this rebuttal, Sunbio pointed to the very portion of Biogrand's brief that it now argues on appeal was insufficient to have put it on notice. J.A. 2354 (citing "72 TTABVUE 14," which corresponds to J.A. 2302). Accordingly, Sunbio's response to this argument in its own trial brief shows that it was aware of this argument and the Board's decision was

not "decision by ambush" as Sunbio contends on appeal. Appellant's Br. 17–18.

The second portion of Biogrand's opening brief referenced by the Board further shows that Sunbio was on notice of Biogrand's theory of non-use.  *See* J.A. 2328–29. This section discussed abandonment—a different theory for cancellation advanced by petitioner Biogrand. J.A. 2328.  A mark is "abandoned" when "use has been discontinued with intent not to resume such use."  15 U.S.C. § 1127; *see also Jobdiva*, 843 F.3d at 940.  Accordingly, use in commerce is a predicate to a finding of abandonment. Logically speaking, you cannot abandon something you never owned in the first place.  The abandonment section of Biogrand's brief makes clear that Biogrand was first preserving an argument of non-use before going on to argue abandonment.  J.A. 2328.

In the first paragraph, Biogrand argued that "there was just one sale of the 'Smart Memory' product made for SmartNutri, a foreign company unrelated to Respondent." *Id.*  Furthermore, Biogrand argued "there is no agreement with SmartNutri relating to the BF-7 trademark," indicating SmartNutri's use would not be attributable to Sunbio. *Id.*  Then, Biogrand transitioned to abandonment in the next paragraph: "assuming arguendo, that the single token sale of 'SmartMemory' could be attributable to [Sunbio]," it had abandoned the mark.  *Id.*  This section of the brief further demonstrates that Biogrand's position was that the actions pointed to by Sunbio as showing use of the mark were attributable to SmartNutri, not Sunbio, and thus Sunbio did not own the mark.  The Board did not abuse its discretion in considering this argument; Sunbio was on notice, and thus we reject its first argument on appeal.

Because we conclude that Sunbio was on notice of Biogrand's argument based on Biogrand's opening trial brief, Sunbio's reliance on *Novosteel* is misplaced.  Appellant's

Br. 12.  In *Novosteel*, we held an argument waived because it had not been raised until a summary judgment reply brief before the Court of International Trade and was not considered by that court; accordingly, we refused to "address that argument in the first instance."  *Novosteel*, 284 F.3d at 1264, 1273–74.  Here, as explained above, the argument was made in Biogrand's opening brief (and addressed in Sunbio's response brief).  Furthermore, the Board expressly considered the argument, negating the concern that we, as an appellate court, would be wandering down our own path in considering an argument the Board did not consider.  *See id.* at 1274 (noting that "parties must give a trial court a fair opportunity to rule on an issue").

## II

Sunbio next argues that the Board's finding that Sunbio did not own the mark is not supported by substantial evidence.  We disagree.  The Board relied on:  (1) evidence relating to the alleged sales of finished BF-7 nutritional products (e.g., the specimen) in the form of photos and testimony of Mr. Chang and a Medience representative; (2) evidence regarding sales of raw BF-7 materials in the form of Sunbio's sales records; and (3) evidence regarding the advertising of the BF-7 mark from the websites of both SmartNutri and Sunbio.  As discussed below, this evidence provides ample support for the Board's finding that Sunbio did not own the mark at the time of filing its application for registration.  The Board also found that SmartNutri's use of the mark could not be properly attributed to Sunbio under the "related companies" doctrine.

## A

We first consider the evidence on which the Board relied in finding that Sunbio did not own the mark at the time it filed its trademark registration application.  As discussed below, that evidence more than satisfies the substantial evidence standard.

1

First, regarding finished nutritional products, the Board examined the evidence regarding the creation of the specimen, including the photos submitted by Sunbio with its registration application shown above. J.A. 1101–02. As noted above, the photos show a product that refers only to "SMARTNUTRI" as a potential source, and, as the Board found, Sunbio's "company name is nowhere on the product box." *Board Decision*, 2020 WL 6255442, at *8.

The Board also reviewed testimony regarding the production of the specimen—including the deposition testimony of Mr. Chang, as well as the declaration and deposition testimony of Mr. Sang Jae Park, a Medience representative. Based on this evidence, the Board found that SmartNutri, not Sunbio, was the party that worked with Medience to make the sample product. *Board Decision*, 2020 WL 6255442, at *8–9. This finding is supported by substantial evidence. Critically, in a portion of Mr. Chang's deposition cited by the Board, Mr. Chang testified that a "SmartNutri employee" prepared the packaging for the specimen and assisted in developing the final formulation for those sample products. *Id.* at *9 n.35 (first citing J.A. 1950 (Chang Dep. 73:9–25 (testifying that Chang prepared the label and packaging with his "employees back then in South Korea")); and then citing J.A. 1951 (Chang Dep. 77:6–14 (naming a specific SmartNutri employee that prepared the packaging label))); *id.* at *8 n.31 (citing J.A. 1964–65 (Chang Dep. 129:20–130:12 (clarifying that the employee assisted in the formulation))). According to Mr. Chang, this SmartNutri employee was not an employee of Sunbio. *Id.* at *8 n.31 (citing J.A. 1965 (Chang Dep. 130:13–18)). Likewise, in the portions of Mr. Park's declaration and deposition cited by the Board, he testified that Medience made the sample products "in consultation with SmartNutri" and sold those products "[o]nly to SmartNutri." *Id.* at *8 nn.29, 31 (first citing J.A. 1757

(Park Decl. ¶¶ 3–4); and then citing J.A. 2223 (Park Dep. 17:8–11)).

The Board also considered Mr. Chang's declaration referencing "email communications" that allegedly evidenced sales of goods in 2014, along with a check for payment from them. *Id.* at \*10. The Board noted that, although the check was "written to Sunbio Corporation," the email communication was between the customer and Thomas Chang using his SmartNutri email address (thomas@smartnutri.co.kr). In addition, the "product was shipped in the same [SMARTNUTRI-labelled] product box depicted in the [specimen] photographs." *Id.*

We agree with the Board that this evidence supports its finding that Sunbio, at the time of filing its application for registration of the BF-7 mark, was not the owner of the mark because it had not used the mark in commerce for finished nutritional products.

2

Second, the Board examined Sunbio's alleged use of the BF-7 mark as it related to the sales of raw materials (i.e., in powder form), finding the evidence of record as to that use was deficient to show that Sunbio was the owner of the mark. *Board Decision*, 2020 WL 6255442, at \*9–10. The Board examined the sales records submitted by Sunbio in two groups: (1) the first two sales identified as "SNC001" (identified as "BF-7 Silk Peptide"); and (2) the remaining sales identified as "CQ001" (identified as any one of "Cera-Q," "Cera-Q (Silk Peptide)," or "Cera-Q (Silk Peptide – BF-7)"). *Id.*; *see also* J.A. 2011–12.

For the first group of sales, the Board analyzed the purchase orders introduced by Sunbio, one of which is shown below:

**SmartNutri Co., Ltd.**
606-607 Ho, 111, Deokpungdong-ro, Hanam-si, Gyeonggi-do, 465-831 Rep. of Korea
Tel: +82. 31. 794. 8468 | Fax: +82. 31. 794. 8467

**PURCHASE ORDER**

| Date: | 2015. 02. 12. |
|---|---|
| P.O. NO.: | SN_SB140925 |

| VENDOR | SHIP TO |
|---|---|
| **SunBio Corporation** 1756 Aryana Drive, Encinitas CA 92024 USA Tel: 1. 760. 634. 1901    Fax: 1. 760. 634. 1908 | |

| Ship VIA: Delivery Service | | Payment : | T/T in advance |
|---|---|---|---|

| No. | Product Description | Qty (kg) | Unit Price (USD) | Net Price (USD) |
|---|---|---|---|---|
| 1 | BF-7 (Silk Peptide) | | | |

REVISED

| | Total Qty | |
|---|---|---|

J.A. 2177; *see also* J.A. 2178. At best, these purchase orders are ambiguous as to Sunbio's ownership because they list "SunBio Corporation" as the "vendor," but were created on "SmartNutri Co., Ltd." letterhead, which the Board found as a factual matter "give[s] the clear impression that SmartNutri is the ultimate source of the product and Sunbio is a middle-man re-seller." *Board Decision*, 2020 WL 6255442, at *9.

The Board supported its interpretation of the purchase orders by relying on Mr. Chang's testimony, which the Board found confirmed that "these [p]urchase [o]rders were indeed invoices that SmartNutri issued in 2015 and 2016, before the Korean authorities shut down SmartNutri." *Id.* (citing J.A. 1979–80 (Chang Dep. 200–01, 204)). Sunbio challenges a select portion of this relied-upon testimony, quoted below, arguing that it was "Biogrand's counsel testifying" and suggesting Mr. Chang was confused by the redacted purchase orders in front of him at the time. Appellant's Br. 28–29.

14                                          SUNBIO CORP. v. BIOGRAND CO., LTD.

> Q: And these were invoices that SmartNu-
> tri issued before it was shut down; right?
> So it's early 2015 and early 2016 --
>
> A: Okay
>
> Q: --correct?
>
> A: It was blacked out, so I don't know, yes.
> Okay.

J.A. 1979 (Chang Dep. 200:4–9).  This selected portion of Mr. Chang's testimony is indeed equivocal, as Sunbio argues.  But when the cited testimony is viewed as a whole (as the Board undoubtedly did), it provides substantial evidence supporting the Board's finding that SmartNutri was the source while Sunbio was a mere middle-man.  Specifically, after Mr. Chang's equivocal response, counsel refreshed his recollection by pointing to another document that was an invoice "dated 2016 January 12th" (the same date as the redacted invoice he was looking at), J.A. 1979–80 (Chang Dep. 200:24–201:1), after which Mr. Chang unequivocally testified:

> Q: Okay.  So looking at the way the pur-
> chase order is set up, *the sale is being made
> by SmartNutri to Sunbio Corporation*, but
> the delivery is to the ultimate purchaser;
> right?
>
> A: Correct.

J.A. 1980 (Chang Dep. 201:20–24) (emphasis added).  This supports the Board's finding that the sales of raw material SNC001 for which Sunbio introduced purchase orders would have been viewed as coming from SmartNutri, with Sunbio being only a middle-man.

Next, the Board looked to the remaining orders of "CQ001," for which Sunbio did not introduce purchase orders.  The Board first noted that direct evidence of use on raw materials was lacking, explaining that "[p]hotographs

of the drums containing raw silk fibroin peptide materials and bearing BF-7 labels were not submitted into evidence." *Board Decision*, 2020 WL 6255442, at \*10.  Sunbio argues on appeal that this meant the Board "did not consider how goods other than those in the specimen were marked . . . improperly shift[ing] the burden of proving validity to Sunbio." Appellant's Br. 27.  Contrary to Sunbio's assertion, however, the Board did not rely solely on the fact that Sunbio did not introduce photographs and purchase orders for these sales.  The Board also relied on Mr. Chang's testimony that "the name on the air shipment documents and product drum labels was changed from BF-7 to Cera-Q, as a favor to [Sunbio's] customer so as not to confuse further downstream purchasers of the product re-sold in this form." *Board Decision*, 2020 WL 6255442, at \*10 (citation omitted).  Notably, Sunbio does not challenge the Board's reliance on this portion of Mr. Chang's testimony.  We conclude that this testimony provides substantial evidence to support the Board's conclusion that these sales do not show use of the BF-7 mark by Sunbio.

3

Lastly, the Board briefly addressed evidence in the record regarding promotion of the BF-7 mark.  The Board noted that Sunbio's website, depicted below, promoted a product "bearing the CERA-Q trademark" rather than the BF-7 trademark, and that the website of Sunbio's sole customer showed the same CERA-Q mark.  *Board Decision*, 2020 WL 6255442, at \*10 (first citing J.A. 1114; then citing J.A. 1173–75; and then citing J.A. 1179–99).

16                                    SUNBIO CORP. v. BIOGRAND CO., LTD.



J.A. 1174. In contrast, the Board found that SmartNutri's website, depicted below, showed "a silk fibroin product promoted in association with the BF-7 trademark." *Id.* (citing J.A. 1138–72).



J.A. 1139. This documentary evidence provides further support for the Board's finding that Sunbio was not the owner of the BF-7 mark.

\*    \*    \*

The record evidence, viewed collectively, provides ample support for the Board's finding that "all indicia point to SmartNutri as being the owner of the BF-7 mark when [Sunbio] filed its underlying trademark application." *Board Decision*, 2020 WL 6255442, at *11.

B

We next consider the Board's determination that SmartNutri's use of the BF-7 mark—of which there was ample evidence—could not be properly attributed to Sunbio under the "related company" doctrine. *Board Decision*, 2020 WL 6255442, at *11–13 (citing 15 U.S.C. §§ 1055, 1127 (regarding the related company doctrine)). The Board found as a factual matter that: (1) Sunbio "did not exercise control over the nature and quality of goods sold by SmartNutri in connection with the BF-7 mark" and (2) SmartNutri "had no agreements with [Sunbio] concerning the use of the BF-7 mark." *Id.* at *12–13. We determine that substantial evidence supports these fact findings and agree with the Board's well-reasoned analysis and conclusion.

On appeal, Sunbio does not contest the Board's finding that Sunbio did not control SmartNutri such that SmartNutri's use should be attributable to Sunbio. Instead, Sunbio argues the Board erred by failing to consider whether an agreement existed granting, from SmartNutri, the rights to use the term BF-7 in the U.S. market to Sunbio. The Board considered this possibility and rejected it, relying on three pieces of evidence. First, the Board relied on the fact that Sunbio, in response to an interrogatory, swore that it would produce documents "evidencing a license agreement to use the mark 'BF-7' in it[s] possession," but that no such licenses were introduced into the trial record. *Board Decision*, 2020 WL 6255442, at *12 (alteration in original) (citing J.A. 1210). Second, the Board noted Sunbio's response to a different interrogatory requesting details of Sunbio's "relations and communications with

SmartNutri," to which Sunbio responded that "SmartNutri . . . does not have any affiliation with [Sunbio]." *Id.* (quoting J.A. 1210–11). Finally, the Board pointed to Mr. Chang's testimony that he endeavored to keep SmartNutri and Sunbio separate. *Id.* (citing J.A. 1947–48 (Chang Dep. 59–64)). This record evidence provides more than substantial evidence to support the Board's factual finding that SmartNutri "had no agreements with [Sunbio] concerning the use of the BF-7 mark." *Id.* at *13.

In response, Sunbio points to scant evidence on appeal attempting to show the existence of a license from SmartNutri to Sunbio. Principally, Sunbio relies on a short portion of Mr. Chang's deposition as establishing the existence of this agreement. Appellant's Br. 19 (citing J.A. 1949 (Chang Dep. 68:21–24)). In that cited portion, Mr. Chang testified that there were "two different finished products [he] had made. One . . . did not bear 'BF-7' anywhere on the label. The other one, which [he] was trying to launch in the Korean community in USA had that name 'BF-7.'" J.A. 1949 (Chang Dep. 68:21–24). This testimony says nothing of an agreement. Therefore, we conclude that substantial evidence supports the Board's finding that "SmartNutri . . . had no agreements with [Sunbio] concerning the use of the BF-7 mark." *Board Decision*, 2020 WL 6255442, at *13.

## CONCLUSION

We have considered Sunbio's remaining arguments on appeal but find them unpersuasive. Because we conclude that Sunbio was on notice of the theory relied upon by the Board in cancelling Sunbio's mark and because we conclude that substantial evidence supports the Board's finding that Sunbio was not the owner of the BF-7 mark at the time of its trademark registration application, we affirm.

**AFFIRMED**